UNITED STATES TRUST Co. v. NEW YORK, W. S. & B. R. Co.

(*Circuit Court, D. New Jersey.* December 19, 1885.)

1. RAILROAD COMPANIES — MORTGAGE BY INSOLVENT — APPOINTMENT OF RECEIVER.
    Where a railroad company borrows money and gives a mortgage upon all the property it then has or may thereafter acquire, the mortgagees are entitled to be protected as against all other and subsequent claims. But the courts, in appointing a receiver to take charge of the affairs of an insolvent company, impose conditions such as they deem just, respecting the payment of claims; and may require that the current earnings be applied to the payment of the running expenses, and the like.

2. SAME—EQUITABLE LIEN—PAYMENT OUT OF THE EARNINGS OF THE ROAD.
    Where a person has a claim against a railroad company for articles furnished to be used in the operating of the road, sold subsequent to the giving of the mortgage, which claim was not secured at the time of the appointment of the receiver, he will not be entitled to a decree of court declaring such claim to be an equitable lien upon the earnings of the road superior to the lien of the mortgagees, and to an order directing the receiver to pay same from such earnings.

On Petition of Howard Watch & Clock Company.

*Mr. Cromwell, Mr. Miller,* and *Mr. Hey,* for petitioners.

*Wm. A. W. Stewart, contra,* for complainant.

NIXON, J. The petitioner in this case has a claim against the defendant corporation, amounting to $1,705.68, for clocks furnished to the company from October 1, 1883, to January 9, 1884, and prays the court to make an order that the said claim shall be decreed to be an equitable lien upon the revenues and property of said company, prior to the complainant's mortgage and all other liens, and shall be paid as soon as practicable out of the revenues of the said railway company, as the same may be received, or out of the mortgaged property of the corporation when sold on decree of foreclosure.

As was remarked by Judge BROWN, of the supreme court of New York, in his opinion filed October 23, 1885: "It is a fact well known to every one connected with the litigation that the income from the operation of the railroad by the receivers has not been sufficient to pay the operating expenses." It hence results that this is practically an application to the court to order the payment of the claim from the *corpus* of the property, and the simple question to be determined is, to what extent should the court impair and diminish the fund, pledged to the bondholders in the mortgage, in order to satisfy the current debts contracted in operating the road by the receivers, or before their appointment? It is a question new in some of its aspects, and somewhat unsettled, and requires grave consideration.

It appears in the case that the New York, West Shore & Buffalo Railway Company, the defendant corporation, by virtue of the authority and power vested in it by its charter of incorporation, on the fifth of August, 1881, executed and delivered to the United States Trust Company, of New York, a mortgage upon all its property, then held or afterwards to be acquired, to secure to the bondholders the payment of fifty millions of dollars, represented by bonds, issued and to be issued to pay its subsisting indebtedness, and to aid in the construction of a railroad from Weehawken, New Jersey, to Buffalo, in the state of New York. It is a fact worthy of notice, in this connection, that in the tenth paragraph of said mortgage the corporation agreed with the persons holding said bonds that, "upon filing of a bill in equity, or other commencement of judicial proceedings to enforce the right of the trustee and of the bondholders, * * * the said trustee shall be entitled to the appointment, by any court of competent jurisdiction, of a receiver or receivers of the property hereby mortgaged, and of the earnings, income, rents, issues, and profits thereof pending such proceedings, with such powers as the court making such appointment shall confer."

The railway company first defaulted in the payment of the interest due upon the bonds on January 1, 1884, and continued in default until January 6, 1885, when the trustee, exercising the option conferred by the fifth section of the mortgage, duly elected that the entire principal sum secured thereby should be become due immediately. On the ninth of June, 1884, the trustee for the bondholders had filed a bill in this court for the foreclosure of the mortgage, and under its provisions had applied to the court for the appointment of receivers. An order was made of that date, following the supreme court of New York, appointing Horace Russell and Theodore Houston, who at once entered upon the discharge of their duties as receivers, and have since continued to discharge the same under the direction of this court. A provision was inserted in the order for their appointment to the effect that "the receivers, as speedily as the same can be done without prejudice to the property in their hands, *may* pay all the debts and balances due to the laborers and other persons heretofore employed by

the said defendant for labor and services done, or due for necessary supplies furnished in the operation of the said defendant's railway, or in maintaining or keeping the same in repair, since the first day of March, 1884."

This is, substantially, an application to the court to enforce an equitable lien against the *corpus* of the railway property, to secure the payment for necessary supplies furnished to the corporation more than three months before the appointment of the receivers. When the debt was contracted, the mortgage was subsisting and outstanding; the company was operating the road, and the creditor had only the relation of a general creditor. There was no lien upon anything to secure it. Does it legally result, from the mere fact of the appointment of receivers to preserve the property *pendente lite*, that the character of the debt has changed from an unsecured to a secured claim?

It is sometimes said that when a bill is filed to foreclose a railway mortgage, and an application is made for receivers to take charge of the mortgaged property, the bondholders, in making such request, are asking a favor of the court, and the court, in granting it, may impose such terms for the payment of existing debts as it deems equitable and just. The reason for the remark is that the receipts from running the road is a fund primarily to be applied to the payment of the necessary operating and managing expenses, and when these receipts come into the hands of a receiver the court should take care that they are thus applied, before the bondholders should derive any benefit therefrom. But in the present case the appointment of receivers was not a favor granted to the bondholders, but was a right which had been expressly reserved them in the mortgage, the contract between the parties. It was a matter of discussion, when the appointment was made, as to how far the receivers should be allowed, from the income of the road, or from money received from the sale of their certificates, to pay antecedent debts, and the court, in the order of appointment, gave to them the discretion of going back to the first of March preceding, —about three months,—and the present claim was not paid by them because the debt was contracted before that date.

If any income from the road had been left in the hands of the receivers after paying current running expenses, there would be no difficulty about the case. Under the authority of *Fosdick* v. *Schall*, 99 U. S. 235, and *Burnham* v. *Bowen*, 111 U. S. 776, S. C. 4 Sup. Ct. Rep. 675, I should not hesitate to order the payment of the claim out of such income. It would be only equitable to require the receivers to do what the company would have been expected and ordered to do if it had retained the possession of the property, to-wit, to use the current receipts for the payment of current debts. But the receivers have no net income for any purpose; their running expenses have greatly exceeded their current receipts. The court, with much reluctance, authorized the payment of the deficiency from funds obtained from the sale of the receivers' certificates. It assented to this

because the great body of bondholders represented that their ultimate interests required that the road should be kept in operation even if the expenses and losses should become a charge upon the *corpus* of the property, and should be treated as a lien superior to their mortgage.

The fact that the receivers had no net income after the payment of the necessary operating and managing expenses, proper equipments, and useful improvements, is decisive of this case. I am sorry that there are no funds for the payment of the honest and undisputed debt of the petitioner. He trusted the corporation and the corporation is insolvent. But I cannot allow my sympathy for the creditor to lead me to the unjustice of taking property, or the proceeds of the sale of property, previously pledged for the payment of the debts of other people, to reimburse him.

The note of warning sounded by the chief justice, speaking for the whole supreme court, in *Burnham* v. *Bowen*, 111 U. S. 776, S. C. 4 Sup. Ct. Rep. 675, is quite suggestive, in this connection. "We do not hold," he says, "any more than we did in *Fosdick* v. *Schall* or *Huidekoper* v. *Locomotive Works*, 99 U. S. 260, that the income of a railroad in the hands of a receiver for the benefit of mortgage creditors who have a lien upon it under their mortgage can be taken away from them and used to pay the general creditors of the road. All we then decided and all we now decide is that if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use."

There has been no such use or application in this case, and the claims of the petitioner can only be paid from any surplus that may remain after the full satisfaction of the debts of the mortgage creditors.

The claims being of the same nature and involving the same principle, a like order must be entered in the following cases: (1) *Petition of New York Economic Printing Co.* (2) *Petition of Cleveland City Forge & Iron Co.* (3) *Petition of Maher & Brayton.* (4) *Petition of American Bank Note Co.* (5) *Petition of Allen W. Swift.* (6) *Petition of Ross & Sanford.*