## THE METROPOLITAN TRUST COMPANY OF THE CITY OF NEW YORK, APPELLANT, *v.* THE TONAWANDA VALLEY AND CUBA RAILROAD COMPANY AND OTHERS, RESPONDENTS.

*Receiver of railroad — power of the court to authorize the issue of certificates of indebtedness — to give them priority over existing mortgage liens.*

In this action, brought by the trustee of a mortgage given by a railroad company to foreclose the same and procure the appointment of a receiver *pendente lite*, an order was made appointing a receiver to take possession of, preserve, manage, control and operate the road under the direction of the court, and authorizing him, as speedily as he could, without prejudice to the property in his hands, to pay all the debts and balances due to the laborers theretofore employed by the company for labor and services done, or due for supplies furnished in the operation of the road, and for which they had a lien, and also the necessary expenses of maintaining, keeping in repair and operating said road.

The receiver, upon qualifying, entered into possession of the road and operated. the same, retaining in his services the employees and laborers who had been engaged in running and operating the road for the company, to whom the company was, at the time of his appointment, indebted in the sum of $8,400.21 for wages earned during the three months immediately preceding the commencement of this action. Upon the petition of certain of these employees and of the receiver, an order was made authorizing him to issue certificates of indebtedness to the amount of the said debt due to the employees, and declaring that such certificates of indebtedness, with the interest thereon, be a lien and charge on all the property of the railroad company prior to the lien of the several mortgages or deeds of trust upon the said railroad, or upon any part thereof, and prior to the lien or claim of any of the defendants, and if, at the time of the final order or decree to be made in the action, any of the said certificates should not have been previously paid by the receiver, provision should be made in such decree for their payment.

Upon an appeal from said order taken by the plaintiff, and the trustee of a prior mortgage given by other companies from the consolidation of which the defendant's company was formed:

*Held*, that the order might be sustained as against the plaintiff, by reason of the fact that it assented to the insertion of the clause in the order appointing the receiver which provided for the payment of these claims, and that that order still remained in full force and effect.

That as against the trustee of the prior mortgage who was not before the court at the time the order appointing the receiver was made, the order should be sustained as properly made by the court in view of all the circumstances, upon the ground that the debt for the wages of the laborers for services rendered prior to the placing the road in the hands of the receiver was properly allowed as an item of expense incurred by the receiver in running and operating the road.

*Miltenberger* v. *Logansport Railway Company* (106 U. S., 286) and *Douglass* v. *Cline* (12 Bush. [Ky.], 608) followed.

APPEAL by the plaintiff and the defendant, the Farmers' Loan and Trust Company, from an order of the Allegany Special Term, authorizing the receiver to issue certificates of indebtedness and making them a lien on the mortgaged property, prior to the lien secured by the mortgages thereon.

The defendant, the Tonawanda Valley and Cuba Railroad Company, is a corporation created by and under the laws of this State, by and through the consolidation of the corporate property, rights of way and franchises of the Tonawanda Valley and Cuba Railroad Company, the Tonawanda Valley Railroad Company and the Tonawanda Valley Extension Railroad Company, corporations then existing under the laws of this State. Prior to this consolidation the Tonawanda Valley Railroad Company had issued its first mort-

gaged bonds to the amount of $100,000, and had secured the payment thereof by a mortgage of all its property and franchises to the Farmers' Loan and Trust Company, one of the above-named defendants; the length of this road was about twenty miles. By the terms of the agreement for the consolidation of the said corporations, it was provided that the consolidated company should assume the payment of the principal and interest of the unpaid bonds issued by the original company, which at that time amounted to about $79,000. The length of the Tonawanda Valley Extension Railroad Company was about seven miles, and at the time of the consolidation there was a mortgage upon it to secure the bonds of the company in the amount of $34,000. After the consolidation the portion of the line known as the Tonawanda Valley Extension Railroad Company, being a distance of about thirty-three miles, was completed, and the consolidated company, on the 1st day of September, 1881, executed a mortgage upon all the property of the consolidated company to the plaintiff in this action to secure its bonds in the sum of $377,000. The 1st of September, 1884, default was made in the payment of the interest due on the last-mentioned bonds and this action was commenced by the plaintiff, as trustee, for the foreclosure of the mortgage securing the same, and for the appointment of a receiver *pendente lite.* The defendant, the Farmers' Loan and Trust Company, appeared and answered the complaint, setting forth and describing the mortgage held by it, as trustee, and claimed priority of lien on the mortgaged property. After the commencement of the action on the application of the plaintiff, and upon notice to the defendant, the railroad company, and on the 27th day of November, 1884, Burd W. Spencer was appointed receiver.

At the time of the granting of the order appealed from, the action had been tried and the receiver was in the possession of the property running and operating the road. The other material facts appear in the opinion of the court.

*Thomas J. Hillhouse,* for the appellant, The Metropolitan Trust Company.

*Turner, Lee & McClure,* for the appellant, The Farmers' Loan and Trust Company.

*McFarland & Platt*, for the receiver.

*Carr & Randall*, for the respondents.

BARKER, J.:

As the receiver was appointed on the application of the plaintiff, the trustee for the bondholders, the legal questions presented are to be considered and determined in view of the facts that both the mortgagor and mortgagee consented to all the terms and conditions contained in the order of his appointment, which confers upon him the power and authority to take possession of, preserve, manage, control and operate the railroad and other mortgaged property under the direction of the court, and that he be vested with all the powers conferred upon him by law and the practice of the court in like cases. The order also contained a special provision, to wit, " that the receiver, as speedily as the same can be done without prejudice to the property in his hands, may pay all the debts and balances due to the laborers heretofore employed by the said defendant for labor and services done, or due for supplies furnished in the operation of said railroad, and for which they have a lien, and also the necessary expenses of maintaining, keeping in repair and operating said railroad." After the receiver duly qualified, and in the early part of December, 1884, he took full possession of the road, its rolling stock and other property, and operated the same, carrying freight and passengers, retaining in his service the employees and laborers who were engaged in running and operating the road for the railroad company. The entire length of the road is about sixty miles, and at each terminus, and also at intervening points on the line of the road, it makes connections with other railroads and exchanges traffic, both freight and passengers, and carries over its line the United States mail, receiving a compensation therefor. At the time the receiver was appointed the company was indebted to its employees and laborers, engaged in running and operating the road, in the sum of $8,421 for wages earned during the three months immediately preceding the commencement of this action, and also to various other parties for supplies furnished and used in operating the road during the same time, the exact amount of which does not appear in the papers now before the court, but in the aggregate such indebtedness did not exceed the sum of $3,000, being for coal,

wood, oil and for current balances due the connecting railroads.   In March, 1885, the gross earnings received by the receiver amounted to $7,266.58, which he had disbursed in payment of current expenses, less $253.80 then in his hands, leaving a deficiency in the current expense account.   The taxes for the year 1884, amounting to $753.95, were unpaid; the board of railroad commissioners has caused the road to be inspected for the purpose of ascertaining its condition, and suggested to the receiver that certain repairs and improvements should be made on the bridges, trestle-work and road-bed, with a view of keeping the road in a condition of safety, the estimated cost of which amounted to several thousand dollars.

The laborers, upon affidavits setting forth the nature and character of their indebtedness, and when the same accrued and upon notice to the receiver, applied at the Special Term for an order requiring the receiver to pay and discharge the indebtedness due them for their labor and services while in the employ of the company before the appointment of the receiver.   At the same time the receiver presented a petition to the court for permission to issue certificates of indebtedness in the aggregate sum of $20,000, for the purpose of paying the debts due the employees and laborers, and to enable him to pay the taxes assessed upon the property, and to place the road in a proper state of repairs, and to pay the deficiencies as they then existed for running and operating the railroad after the same came into his hands, and that such certificates be declared a lien and charged upon all the property of the railroad company prior and superior to the lien of the several mortgages and the bonds secured thereby, and that the receipts be applied in payment of the several debts and in making the repairs, as set forth in the petition.   These motions were heard together on the 27th of April, 1885.   In his petition the receiver sets forth in detail the financial condition of the company and the state of his accounts, also gives the reason why, in his judgment, the fund for the payment of its debts and demands should be raised by means of the certificates of indebtedness, and why they should be, in his opinion, made a lien on the property prior to the several mortgages.   Neither of the appellants denied any of the allegations set forth in the petition.

The court ordered a reference to take proof of the matter set forth in the petition, and to report the same to the court with the opinion of the referee thereon. All the parties now before the court on this appeal attended before the referee, and from the evidence he found as a fact, that during the months of September, October and November, 1884, the usual force of employees worked and labored on the said railroad, in the usual manner, repairing its road-bed, operating its trains and doing the general business of said road, and they have not been paid therefor, and there was due them on the 1st day of December, 1884, for such work and labor, the sum of $8,400.21 ; *that the continuance of their services by the receiver was important for the well being of the road.* It is not necessary, for the purpose of disposing of the questions presented on this appeal, to make any detailed statement as to the other items of indebtedness which go to make up the amount directed to be paid out of the funds realized on the sale of these certificates, for the reason that the appellants assent to such allowance. As a conclusion, from the facts found by him, the referee recommended that the certificates of indebtedness be issued sufficient to cover the several amounts, and that the same should constitute a lien on the property of the railroad company in the hands of the receiver superior to any other claim or lien whatsoever. In the order affirming the report, certificates of indebtedness were authorized to be issued in the sum of $18,402.45, for which amount $8,400.21 was for the debt due the employees and servants of the road for their labor and services in operating the railroad prior to the appointment of the receiver, and the sum of $3,000 for a deficiency in the supply account, and it was declared that such certificates of indebtedness, with the interest thereon, be a lien and charge on all the property of the railroad company prior to the lien of the several mortgages or deeds of trust upon the said railroad, or upon any part thereof, and prior to the lien or claim of any of the defendants, and if, at the time of the final order or decree to be made herein, any of the said certificates shall not have been previously paid by the receiver provision shall be made in such decree for their payment.

The exceptions filed by the appellants relate to the last named items only. None of the earnings of the road, during the period of time for which the employees and laborers now remaining unpaid

were earned, were applied toward the payment of the interest or principal of any of the mortgaged creditors. This chronological history of the case will aid in disposing of the questions presented on this appeal.

It is not disputed but that the court possessed the authority and could confer on the receiver the power to continue the ordinary operations of the corporation, to run the trains of cars, to keep the tracks, bridges, cars and other property in repair so as to save them from destruction ; and if the net income of the road should prove insufficient to pay in full such expenses, they should be paid out of the income derived from the sale of the mortgaged property prior to the bond indebtedness secured by the several mortgages. The property of an insolvent corporation, when placed in the hands of the court at the instance of the mortgaged creditors, is treated as a trust fund to be protected and preserved for the benefit of incumbrancers as well as for the general creditors of the corporation. (*Wallace* v. *Loomis*, 97 U. S., 146 ; *Barton* v. *Barbour*, 104 id., 126 ; *Fosdick* v. *Schall*, 99 id., 252 ; Jones on Mortgages, vol. 11, chap. 33.)

But this rule, as stated, does not embrace the power on the part of the court to order, that a debt owing by the company to any of its creditors may be made a lien on the property prior to a valid mortgage duly recorded in compliance with the recording acts.

The lien of a mortgagee once legally established cannot be displaced without his consent or by the legal operations of some acts on his part, which estops him from asserting the superiority of his incumbrance. It is the duty of a court of equity when it has assumed the control and management of mortgaged property *pendente lite*, to protect the rights of all parties having liens thereon and to preserve the order of their priority as established by law. The governing principles upon which priority of lien on property is based and preserved are the vested rights of the creditor which he has acquired, and they are as sacred as any other right of property and cannot be invaded or displaced in favor of a subsequent creditor. Nor can the income of a railroad in the hands of a receiver for the benefit of mortgage creditors, who have a lien on such income under their mortgage, be divested and taken away from them or used to pay the general creditors of the company. (*Fosdick* v. *Schall*, *supra* ; *Burnham* v. *Bowen*, 111 U. S., 776.)

It does not appear from the papers now before us, that in terms either of the mortgages covered the income derived by the company in running and operating the road. A provision to that effect is sometimes embraced in mortgages on railroad property, and is made a controlling circumstance as to the disposition which should be made of the income derived from the earnings. As the claim of the employees and laborers cannot be paid out of the fund derived from a sale of the property, if they are to be regarded merely as general creditors of the mortgagor, we are to inquire whether the order directing the issue of certificates embracing their wages can be sustained for other reasons. The bondholders, by the action of their trustee, have assented to all the terms and provisions of the order appointing the receiver, and by it he was authorized to hold, preserve and operate the railroad. All the necessary debts and obligations incurred by the receiver in carrying out those provisions of the order, the court has the power to order paid out of the funds derived from a sale of the corpus of the property or from its income derived, pending the foreclosure proceedings, and in the absence of sufficient funds in hand to meet such obligations may authorize the receiver to borrow money for that purpose and to issue certificates of indebtedness payable out of the funds thereafter realized and in preference to the mortgage creditors.

Can it be reasonably and fairly said, in view of all the circumstances, that the debt for the wages of the laborers for services done prior to the placing of the road in the hands of the receiver, was properly allowed by the court as an item of expense incurred by the receiver in running and operating the road? The wages were earned within the period of three months prior to the instituting of the foreclosure proceedings. The receiver, with a view of continuing the operation of the road without interruption, did retain in his service for that purpose the men previously employed by the company, to enable him to discharge all the duties which the corporation owed the public and to private parties engaged in shipping goods over the line of the road. In this respect the case is similar in its important facts to those appearing in *Miltenberger* v. *Logansport Railway Company* (106 U. S., 286), where the court allowed items of indebtedness amounting to $10,000, incurred by the rail-

road company before the road came into the hands of a receiver, for materials and supplies used and consumed daily in running the road, and for ticket and freight balances due connecting roads during the three months immediately preceding the appointment of a receiver, as payments properly made to preserve the mortgaged property and maintaining the good will and integrity of the road. In his opinion Mr. Justice BLATCHFORD, speaking for the court, said: "It cannot be affirmed that no items which accrued before the appointment of a receiver can be allowed in any case. Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, *or even the corpus of the property*, under the order of the court, with a priority of lien, yet the discretion to do so should be exercised with very great care. The payment of such debts stands *prima facie* on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interest both of the property and of the public, and the payment of limited amounts due to other connecting lines of road for materials and repairs and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result, in case of non-payment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise and entitle them to be made a first lien." (See, also, *Douglass* v. *Cline*, 12 Bush. [Ky.], 608, where the same rule was adopted.)

These views seem to us to be sound, and we adopt them as fair and just and think that they can be applied to the facts of this case with safety and propriety, and not the least injustice be done

to the bondholders. The running of a railroad is a continuous business, and a manager who is suddenly charged with the duty of operating a road must necessarily, at least for a time, adopt the plans of business and use the force and workmen which he finds engaged at the time he assumes control of the premises.

The allowance of the payment of these items may be upheld as against the plaintiff, for the reason that it consented to the provision in the order for the appointment of a receiver, requiring him to pay the same out of funds which should come under his control. The income of a railroad company is pledged to the payments of its current expenses and the use of any part of the earnings by the managers for the payment of the interest due mortgage creditors, or for making permanent improvements to the property, would be a diversion of the funds, and has been so held in several cases. The employees, as well as parties furnishing supplies used and consumed in the daily operations of a road, have *an equitable lien* for the payment of their wages, which the court will enforce on proper applications in foreclosure actions. The business of a railroad company is necessarily done more or less on credit, all parties understanding that the current expenses are to be paid out of the current earnings, consequently it almost always happens that the current income is incumbered to a greater or less extent with current debts made in the prosecution of a business out of which the income is derived. (*Burnham* v. *Bowen*, 111 U. S., 776.)

In *Fosdick* v. *Shall* (*supra*), it was said : " The income (of a railroad company) out of which the mortgagee is to be paid, is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income." Such being the case, when a Court of Chancery, in enforcing the rights of a mortgage creditor, takes possession of a mortgaged railroad and thus deprives the company of the power of receiving any further earnings, it ought to do what the company would have been bound to do if it had remained in possession, that is to say, pay out of what it receives from earnings all the debts

which in equity and good conscience, considering the character of the business, are chargeable upon such earnings. (*Burnham* v. *Bowen, supra.*)

These claimants, therefore, had acquired an equitable lien on the earnings which the company received during the three months preceding the commencement of this action. It does not appear how much the earnings were during that period, nor how they were used by the managers of the road, except, perhaps, it may be inferred that the $1,400, which came to the hands of the receiver, was derived from that source.

As the payment of these claims has been provided for as required by the receiver in the order of his appointment, and the same remains in full force and effect, the question was adjudicated as against the plaintiff. The proceedings now under review, so far as these claimants are concerned, are for the purpose of carrying into effect a previous adjudication of the court. The provision of the order is, that the receiver pay all the debts and balances due to the laborers heretofore employed by the company for labor done in operating the railroad, and for which they have a lien. The lien on the fund was established on making proof of the facts found by the referee. The court had the right to make it a condition to granting of an order for the appointment of a receiver that existing debts of this class have preference in payment out of any funds which might come under his control, derived from the income or from the sale of the corpus of the mortgaged property. If the trustee was unwilling to assent to those terms, it should have withdrawn its consent to the appointment of a receiver, and allowed the managers of the company to continue in the possession and operation of the road. If they had remained in possession and received the earnings, it is fair to presume they would have applied the same in payment of the claims which the court directed to be paid by the receiver. (*Fosdick* v. *Schall*; *Burnham* v. *Bowen, supra.*)

The defendant, the Farmers' Loan and Trust Company, was not before the court at the time the order was granted appointing the receiver, and is not bound by its provisions, unless it has since acquiesced in the same. If the provisions of the order appealed from could only be upheld upon the ground that the order appoint-

ing a receiver gave a preference in payment to the debts due the laborers, then the exceptions taken by the Farmers' Loan and Trust Company to the referee's report should have prevailed. But the other view which we have taken of the case, and which supports the priority of payment, is applicable to the mortgage in which it is named as mortgagee and trustee. No error occurred in declaring a preference as to these claims over all the mortgages.

The sum of $3,000 allowed was composed of items of indebtedness created for the preservation and management of the property by the receiver, within the rules which we have stated, as to the claims of the laborers, and was properly allowed by the Special Term, and needs no separate consideration.

As the questions presented by this appeal are novel in the courts of this State, the costs of the appellants and of the respondents should be paid by the receiver out of any funds which may come into his hands, derived from the earnings of the road or on a sale of the mortgaged property.

HAIGHT and BRADLEY, JJ., concurred; SMITH, P. J., not sitting.

Order affirmed, with ten dollars costs and disbursements, payable out of any funds in the hands of the receiver, subject to the order of the court.