FARMERS' LOAN & TRUST CO. *v.* CHICAGO & A. RY. CO. *et al.*

BIPPUS *v.* SAME.

*(Circuit Court, D. Indiana.* December 24, 1889.)

RAILROAD MORTGAGE—CAR-TRUST LEASE—PRIORITIES.

An intervenor in proceedings to foreclose a railroad mortgage was the owner of cars in hands of the company under a car-trust lease which reserved to it a right to reclaim its property upon default in payment of rent. Upon the appointment of a receiver, the company being then in default, it petitioned the court, and demanded of the receiver that its cars be returned within 30 days. They were not returned, but were continuously used by the receiver, without objection of the bondholders

or trustee, and payments were made on the rental by the application thereto of the freight earned by transportation for the petitioner. After a lapse of three months, intervenor filed a second petition, stating the facts, and asking that the receiver be directed to pay the amount due under the car-trust contract, and that the same be declared a prior lien upon the earnings, as well as on the property embraced in the mortgages. *Held,* the retention and use of the cars by the receiver, and the non-action of the bondholders, did not amount to a conversion; that petitioner was not entitled to payment of the rental according to the terms of the car-trust lease, out of the *corpus* of the estate, but only to a return of the cars within a reasonable time, if so demanded, and a *quantum meruit* for the use thereof.

In Equity.

*James L. High,* for petitioner.

*Baker & Daniels,* for the receiver.

GRESHAM, J. This is an application by the United States Rolling Stock Company for payment of the amount claimed by it under a lease of rolling stock executed to the defendant prior to the appointment of the receiver. On April 11, 1883, the Rolling Stock Company leased to the defendant the Chicago & Atlantic Railway Company 1,000 box cars, 400 gondola cars, and 100 stock cars, under what is known as a "car-trust lease," in the usual form of such instruments. The agreed rental was $723,500, of which $72,000 was paid in cash on delivery of the cars. For the remaining sum, of $651,000, car-trust bonds were executed, drawing interest at 6 per cent. per annum; the final payment of principal maturing July 1, 1889. At the same time an equipment lease was executed between the parties, in the usual form. By this lease it was provided, among other things, that upon payment in full of all installments of principal and interest, and upon performance of all other covenants of the lessee, the legal title to the rolling stock should vest in it upon the payment of a nominal consideration. The lease also provided that upon default in payment of principal and interest as it matured the lessor should have the right to reclaim the property, and the lessee should deliver it at the shops of the lessor in Chicago, or at such other point upon the line as the lessor might direct. The cars continued in the possession and use of the company until the receiver was appointed, since which time they have been in his possession and use.

On February 26, 1886, the Farmers' Loan & Trust Company filed its original bill of foreclosure. The bill averred execution of the first mortgage by the railway company on June 13, 1881, to secure 6,500 bonds of $1,000 each, the mortgage containing a provision that upon six months' default in the payment of coupons representing semi-annual interest, after demand made for the payment of the same, the trustees, upon the request of a majority of the bondholders, might declare the entire principal to be due, take possession of the property, and institute proceedings for the foreclosure of the mortgage and the appointment of a receiver. The bill also averred that the coupons representing the semi-annual interest, due, respectively, November 1, 1884, May 1, 1885, and November 1, 1885, were in default and unpaid, demand having been made for the payment thereof; that the company was insolvent; that the continued operation of the road was necessary for the protection

of the bondholders; and that a receiver should be appointed. It further averred the execution of a second mortgage by the railway company on September 15, 1883, upon which there had been defaults similar to those under the first mortgage. The prayer was for foreclosure of the mortgages and the appointment of a receiver. To this bill a demurrer was filed; the principal ground of demurrer being that the bill did not show any request by a majority of the bondholders for the trustees to declare the principal indebtedness due, and to institute foreclosure proceedings. In an opinion, filed April 8, 1886, (27 Fed. Rep. 146,) the court overruled the demurrer, holding, in effect, that any bondholder was entitled to foreclosure for unpaid interest, although no such demand had been made by a majority of the bondholders as to mature the principal indebtedness. The suit was brought at the request of the holders of past-due coupons, but against the wish and protest of a majority of holders of the bonds, who in open court moved that the suit be dismissed. The court declined to appoint a receiver at that time. On February 2, 1887, the complainant filed an amended and supplemental bill. This bill averred that a meeting of the first mortgage bondholders was held in New York August 17, 1886, at which a majority requested the trustee, in writing, to declare the principal due, and to take such steps as might be necessary for foreclosure and the protection of their interests. It also averred the insolvency of the railway company, and that if the operation of the road should be suspended the security of the bondholders would be greatly impaired; and it contained averments similar to the averments in the original bill as to action taken to mature the principal indebtedness, and prayed foreclosure and the appointment of a receiver. On February 25, 1889, a decree of foreclosure was entered; the amount of principal and interest found due under the first mortgage being $8,874,000, and the amount of principal and interest found due under the second mortgage, $6,500,000. From this decree an appeal was taken in behalf of the second mortgage bondholders, or a portion of them, and a *supersedeas* bond was filed. Pending the appeal, on the application of the trustee and a so-called "purchasing committee," representing, substantially, all the first mortgage bonds and a large amount of the bonds secured by the second mortgage, Volney T. Malott was appointed receiver. This appointment was made May 18, 1889. On July 24, 1889, the rolling stock company filed its petition of intervention, reciting the history of the car trust as above set forth, alleging its ownership of all the car trust bonds and coupons described in the lease and remaining unpaid, default in the payment of principal and interest, and its right, under the terms of the lease, to immediate possession of all the cars in question. The petition prayed that the receiver be directed to deliver the cars to the petitioner, within 30 days, at Hegewich, Ill., where the tracks of the railway company connected with the petitioner's yards. Demand was also made upon the receiver for the cars. On the day previous to the filing of this petition the receiver presented to the court a report in which he stated the various claims upon the property in his possession, the history of the car trust,

substantially as above set forth, default of the railway company in payment of rentals; that there was due under the lease in May, 1889, $423,-000; that after such default the rolling stock company and the railway company entered into an agreement collateral to the car trust, in which the railway company was to do all the freight business of the rolling stock company to and from the town of Hegewich, and the freight so earned by the railway company, as well as advance charges to connecting lines on such freights, which it agreed to pay, should all be credited upon the amount due under the car-trust agreement; that this agreement was kept by the parties prior to his appointment, and afterwards by him, in part, and that, in addition to the cars of the rolling stock company embraced in the lease, he had in his possession, belonging to the railway company, less than 500 freight-cars.    Upon submission of this report the receiver asked the instructions of the court.    On November 4, 1889, the rolling stock company filed its amended and supplemental petition, in which it averred that no part of the equipment had been surrendered to it under the demand made in its original petition upon the court, or under its demand upon the receiver; that after default in the payment of interest on the first and second mortgage bonds, and from thence to the date of the appointment of the receiver, the railway company continued to make payments on the car-trust bonds, such payments being in cash, and by the application upon the indebtedness of the amounts due the railway company from month to month for freight earned by it in the business of the petitioner; that, since the appointment of the receiver, payments had been made from time to time by applying thereon amounts due the receiver for freight transported in like manner as before his appointment; that, both before and since the appointment of the receiver, such payments had been made, and the cars embraced in the lease ·had been continuously used, without objection from any of the bondholders or the trustee in either of the mortgages; and that there was due the petitioner on November 1, 1889, including interest, $414,289.74.    This petition prayed that an order be entered directing the receiver to pay to the petitioner the amount due it on the basis of the car-trust contract, and that such indebtedness be decreed a prior and paramount lien or charge upon the earnings, as well as the property embraced in the mortgages.

It is insisted by the petitioner's counsel that by reason of the matters above stated the receiver, as well as the holders of bonds secured by the mortgages, through their agent, the railway company, converted the cars to their own use, and ratified and affirmed the car-trust bonds and leases, and thereby became liable to pay the petitioner the entire amount remaining due and unpaid.    In the first petition it was claimed that the cars covered by the car-trust agreement were the property of the petitioner, and on that ground their possession was demanded.    In that petition it was not claimed that, by reason of what had previously occurred, the equipment had been converted by the railway company as the agent of the bondholders.    The petitioner was not ignorant of the action of the railway company, and the non-action of the bondholders and their

trustees, when possession of its cars was demanded. When the receiver presented his report to the court, the day before the first petition of intervention was filed, the petitioner was present by counsel, and urged no objection to it. The title asserted by the petitioner to the equipment has never been disputed. Neither the action of the railway company, the non-action of the bondholders, nor the action of the receiver, amounted to a conversion of the property embraced in the car-trust agreement. The receiver is the mere officer or instrument of the court in the preservation and operation of the property, and any acts of his not within the scope of the authority conferred by the order appointing him, and not otherwise authorized by the court, do not bind the court. The receiver did his full duty in connection with the car-trust property by submitting his report to the court and asking its direction. He was placed in possession of property by the court, his possession was the court's possession, and he could not have surrendered the property on demand of the petitioner without the court's consent or authority. It does not follow, because the railway company was permitted to continue in the use of the cars after default, and was thus enabled to maintain its business and earning capacity, that if the petitioner had demanded and received its cars, as it might have done, the railway company could not have obtained equipment elsewhere; nor does it follow that, because the bondholders failed to exercise their right at an earlier day to foreclose for the principal indebtedness, and in that connection ask for the appointment of a receiver, they thereby constituted the corporation their agent for all purposes in the operation of the railway.

The supreme court has never gone to the extent contended for by the petitioner. Neither before nor after the appointment of the receiver was the petitioner prevented from enforcing its undisputed right to the equipment; and it cannot now claim that, by permitting the insolvent railway company to continue in the possession and operation of the property, the bondholders, in effect, pledged the mortgaged property as security for the car rental in advance of the mortgages. Indeed, there is nothing in the record which justifies the petitioner in saying that the bondholders could have caused a receiver to be appointed at an earlier day. Such appointments are always in the discretion of the court, and on the first application the court refused to appoint a receiver. The claim asserted in the supplemental petition was obviously an afterthought.

In *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675, the receiver diverted earnings from the payment of current expenses; and a claim for coal furnished to the receiver was given priority over the first mortgage bonds. In *Miltenberger* v. *Railroad Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140, a receiver was appointed in a suit brought to foreclose the second mortgage. The holders of bonds secured by the first mortgage made no effort to foreclose that mortgage until more than a year afterwards; and the receiver, with full knowledge of the last-named persons, continued to operate the road, including a leased line. The circuit court directed payment in full of the rental for the use of the leased line

by the receiver, which action was affirmed by the supreme court. Neither of these cases justify the contention of the petitioner. In *Union Trust Co.* v. *Illinois Midland Railway Co.*, 117 U. S. 479, 6 Sup. Ct. Rep. 809, it was held that car rentals which accrued before a receiver was appointed were not entitled to be first paid out of the *corpus* of the property.

The equipment embraced in the car-trust agreement is the property of the petitioner, and on its demand possession will be surrendered within a reasonable time; and, if the amount which the receiver has thus far paid for his use of the equipment is not a fair rental on a *quantum meruit*, the court will order further payment on proper showing.