# BERWIND WHITE COAL MINING COMPANY
## *v.*
## BORINQUEN SUGAR COMPANY.

San Juan, Equity, No. 897.

### ON EXCEPTION OF OIL COMPANY TO MASTER'S REPORT.

Preference—Porto Rican Law.

    1. Oil furnished a sugar central does not, under the Porto Rican statute, give a preference or lien upon the sugar cane which is manufactured there.

Equitable Liens.

    2. Under the rule as to current-debt fund, the expenses of operation must be paid before bonds or interest.

Current Debt Fund—Sugar Central.

    3. The principle of reservation of current-debt fund applies to sugar centrals. Claims of this character will be sustained up to the amount shown to be diverted for interest.

Opinion filed March 6, 1914.

*Mr. Francis E. Neagle* for West India Oil Company.

*Messrs. Hartzell & Rodriguez Serra* for receiver.

HAMILTON, Judge, delivered the following opinion:

The claim in this case was filed by the West India Oil Com-

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

pany for $1,984.23, for oils used in the operation of the plant of the Borinquen Sugar Company from February 8, 1912, to June 21, 1912. Upon reference to the master, the claim was allowed only as a general debt, and reference was refused in the master's report filed October 14, 1913. The petitioner duly excepted to the report.

1. The petitioner relies in the first place upon § 1824 of the Civil Code of Porto Rico as amended March 10, 1910, and March 9, 1911, found in § 4930 of the Compilation of Statutes and Codes. This section (2) gives a preference for "credits for advances for agricultural purposes, as to the crops on property for which such advances are made." No authority is cited to show that a lien for a crop can be construed to cover the manufacture of that crop. It would seem that the two are entirely distinct operations. It is true that the sugar crop is meant to be manufactured, but it ceases to be agricultural when it becomes manufactured. It would be absurd to say that oil furnished for a cotton factory in Rhode Island should be a lien upon the cotton crop grown in Alabama, just because the cotton is finally manufactured in the Rhode Island mill. The fact that the cane was grown within a few miles, or even a few hundred yards, of the central, would make no difference in the principle. So far as the local statute is concerned, the exception to the master's report must be overruled.

2. Courts of equity, however, recognize liens or preferences growing out of the nature of the case. In 2 Bates's Federal Equity Procedure, § 618, it is declared the doctrine of the Supreme Court is that the income of a railroad is a "current-debt fund," which shall be paid before interest on mortgages, and that this applies not only to the operation of the road in the

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

hands of a receiver, but to expenses accruing a reasonable time before his appointment. The basis of this rule was Fosdick v. Schall, 99 U. S. 235, 25 L. ed. 339, where it is declared (at p. 252) that "every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income;" and Chief Justice Waite uses as an illustration that often interest is paid to the prejudice of operating expenses, which is an improper diversion of the income. This has been approved by that court in Hale v. Frost, 99 U. S. 389, 25 L. ed. 419, and Burnham v. Bowen, 111 U. S. 776, 28 L. ed. 596, 4 Sup. Ct. Rep. 675. A modification of the rule has been made in Gregg v. Metropolitan Trust Co. 197 U. S. 183, 49 L. ed. 717, 25 Sup. Ct. Rep. 415, where it is declared that money from the sale of mortgaged property under foreclosure is not subject to such claims for material, unless there is shown to be a diversion of the income. The exception in this case shows that there has been such a diversion of income, that is to say, that interest has been paid on mortgages since the receivership to the amount of $57,492.21. The case at bar, therefore, is within the principle of the Gregg Case, if that is applicable to other than railroads.

3. The same principle has been applied to street railway companies, municipal electric light companies, telephone and telegraph companies, irrigation companies, and others. Is there any reason why it should not apply to a sugar central?

This court has held in the decree rendered herein June 30, 1913, that for many receivership purposes a sugar central in Porto Rico is to be regarded as a public corporation, and it has been held by Judge Jenkins, of this court, in the matter of the

Central Alta Gracia, that the supply of oil to a sugar central is within the principle of the Gregg Case. The court is unwilling to disturb these precedents, and will accordingly sustain the exception to the master's report, and declare this claim a preferred one, to rank with other similar preferred claims up to and not exceeding the amount of $57,492.21 above mentioned.

The relative rank of the preference as compared with other such claims, however, cannot now be passed upon.

It is so ordered.

The same principles will govern the exceptions of the Berwind White Coal Mining Company to the master's report of October 14, 1913. The exception to said report is sustained, and this claim for $7,720.03 for coal furnished is allowed preference to the same extent and in the same manner as is allowed the claim of the West India Oil Company above.