**In re ST. LOUIS SOUTHWESTERN RY. CO.**

No. 8497.

District Court, E. D. Missouri, E. D.

Nov. 23, 1936.

White (of Fordyce, White, Mayne & Williams), of St. Louis, Mo., for Bankers Trust Co.

Guy A. Thompson (of Thompson, Mitchell, Thompson & Young), of St. Louis, Mo., for Guaranty Trust Co.

W. Crosby Roper, Jr. (of Milbank, Tweed, Hope & Webb), of New York City, and Allen C. Orrick (of Nagel, Kirby, Orrick & Shepley), of St. Louis, Mo., for Chase Nat. Bank of New York.

R. Walston Chubb, of St. Louis, Mo., for Walter E. Meyer, a minority stockholder.

DAVIS, District Judge.

The petitioner, Berryman Henwood, trustee, St. Louis Southwestern Railway Company, debtor, filed two petitions in this matter, one asking authority to expend approximately $550,000 to build five locomotives in the shops of the railway company, and the other asking authority to expend approximately $500,000 to purchase ten air-conditioned passenger coaches. The necessity for the equipment was clearly shown by testimony of the trustee's operating officials, and the only question is as to the method of financing.

The railway trustee seeks permission to pay for the equipment in cash, and the trustees of three general mortgages of the company and a minority stockholder ask that the railway trustee be directed to negotiate terms for the issuance of equipment trust certificates. One of the mortgage trustees, Bankers Trust Company, of New York, asks that the petitions for payment in cash be denied and that the court direct the railway trustee to pay certain defaulted interest installments for proper application under the railway's Second Mortgage Income Bond certificates. Default has been made in the payment of interest installments under the three general mortgages represented at the hearings.

The railway trustee's comptroller testified that the trustee's cash position and the present and prospective earnings fully justify the expenditure of cash for the building of the locomotives and the purchase of the passenger coaches.

The debtor came into this court with its reorganization petition on December 12, 1935, because it had more debts than it could pay, and it is not the function of the District Court, which now has exclusive jurisdiction over the property of the

A. H. Kiskaddon and Carlton S. Hadley, both of St. Louis, Mo., for Berryman Henwood, trustee, St. Louis Southwestern Ry. Co.

Carlton S. Hadley, of St. Louis, Mo., for St. Louis Southwestern Ry. Co., debtor.

E. W. Bourne (of Alexander & Green), of New York City, and T. W.

debtor and the operation of the railroad, to increase the indebtedness by authorizing the issuance of additional securities. Such action, unless it be essential for the continued operation of the railroad as a common carrier, is not contemplated by amendatory section 77 of the acts of Congress relating to bankruptcy (11 U.S.C.A. § 205 and note), under which this property is being reorganized.

The debtor came into this court to reduce its debts through a plan of reorganization. Certainly the approval of a new form of indebtedness, which almost of necessity must be binding on the successor or reorganized company, thereby increasing the funded debt, when the trustee has or will have sufficient cash on hand to pay for the essential equipment, is within neither the letter nor the spirit of the law.

The railway trustee admittedly can pay for the equipment with cash. The equipment is not only needed, but it is essential if the carrier is to continue operations in such a manner as to remain in any degree competitive to its competing lines.

The security for the bonds issued under these mortgages was seriously depleted when this debtor came into court in December, 1935, and it is only fair—to these very mortgage trustees and their bondholders, as well as to the owners of the equity—that the property be reasonably rehabilitated and that replacements and improvements which are urgently necessary be made. The new equipment will enable the trustee and the reorganized or successor company more economically and efficiently to perform the services for which the debtor company was organized. It will be of benefit to these very creditors, as well as to all others having interests in the property, in that it will increase the value of the security of the bondholders, and the savings in operating expenses and the increased capacity to handle the carrier's business which is anticipated as a result of the new equipment will be reflected in the earnings.

The mortgage trustees attempted to show a custom of long standing whereby railway equipment is ordinarily financed through equipment trust issues. There is no authority to the effect that equipment must be so financed, and the fact that such procedure is customary, if that be

the case, is not sufficiently persuasive to alter the equities or logic of the situation.

It is elementary law that current expenses arising out of the operation of a business must be paid by the trustee out of available funds. They constitute claims prior to claims of bondholders. Southern Ry. Co. v. Carnegie Steel Co., 176 U.S. 257, 20 S.Ct. 347, 358, 44 L.Ed. 458; Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596; Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339.

In Southern Ry. Co. v. Carnegie Steel Co., supra, the court said: "This court has uniformly refrained from laying down any rule as absolutely controlling in every case involving the right of unsecured creditors of a corporation, whose property is in the hands of a receiver, to have their demands paid out of net earnings in preference to mortgage creditors. But it may be safely affirmed, upon the authority of former decisions, that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim upon such income; that, within this rule, a debt not contracted upon the personal credit of the company, but to keep the railroad itself in condition to be used with reasonable safety for the transportation of persons and property, and with the expectation of the parties that it was to be met out of the current receipts of the company, may be treated as a current debt; that whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction; and that when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use."

Although there has been no authoritative decision bearing directly on the propriety of utilizing cash to purchase railway equipment instead of through equipment trusts so that a portion of the cash may be used to pay defaulted bond interest, we find an analogy in the well-known "six months' rule," first applied in rail-

road receiverships and later extended to other public utility companies.

This doctrine, developed by the federal equity courts, permits certain claims for operating expenses incurred within six months prior to receivership to be paid out of the property prior to claims of bondholders. The principle upon which the rule is based was first laid down by the Supreme Court in Fosdick v. Schall, 99 U.S. 235; 25 L.Ed. 339. There the court said, 99 U.S. 235, loc. cit. 251, 25 L.Ed. 339: "We have no doubt that when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property, pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. * * * The business of all railroad companies is done to a greater or less extent on credit. This credit is longer or shorter, as the necessities of the case require; and when companies become pecuniarily embarrassed, it frequently happens that debts for labor, supplies, equipment, and improvements are permitted to accumulate, in order that bonded interest may be paid and a disastrous foreclosure postponed, if not altogether avoided. In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from those to whom in equity they belong, and used to pay the mortgage debt. The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income."

See, also, Virginia & Alabama Coal Co. v. Central Railroad & Banking Co., 170 U.S. 355, 18 S.Ct. 657, 42 L.Ed. 1068; Hale v. Frost, 99 U.S. 389, 25 L.Ed. 419.

The same principle applies to expenses incurred *during* receivership. It arises out of the primary duty of a common carrier to the public to keep the carrier in operation. The rights of lienholders are subject to this paramount duty to the public.

There is no reason why expenditures for additions and betterments chargeable to "capital account" should not have the same preferred status as ordinary operating expenses, when it is shown that the improvements are seriously needed in the proper, efficient, and economical operation of the property and that cash is available. Thus extended, the rule applies to the instant petitions. As a matter of fact, it has been held that the mere fact that the expenditures are in a large part charged to "capital account" under the Interstate Commerce Commission's rules does not alter the priority of the expenses as "current debts." Continental Trust Co. et al. v. W. R. Bonsal & Co. et al., 72 F. (2d) 975 (C.C.A.4th).

Amendatory section 77 provides in paragraph (a) (11 U.S.C.A. § 205(a) thereof that "the court * * * shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." This broad power carries with it the application to railroad reorganizations under this section of the authorities cited above, which originally applied to equity receiverships.

Additionally, it has been held that the power of an equity court having charge of railroad property to make necessary repairs does not depend upon the consent of those interested. Union Trust Co. v. Illinois Midland Ry. Co., 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963. If the court finds that capital expenditures are necessary, the same rule should apply when cash is available.

In exercising its discretion, this court should not increase the indebtedness which the debtor seeks herein to decrease, but when cash is on hand to pay for necessary additions and replacements, as in this case, this court should authorize the expenditure of such cash for such pur-

pose. To authorize the issuance of equipment trust certificates under the circumstances here present, in effect would be to borrow money to pay interest on outstanding bonds.

It was urged at the hearings of these petitions that under the present money market it would be cheaper for the trustee to float an equipment trust issue than it would be to pay interest on the defaulted interest due the bondholders. This is not an effective argument in favor of the issuance of equipment trust certificates for the reason that there is no assurance that the plan of reorganization will provide for the payment of interest on defaulted interest. No plan of reorganization has been filed in these reorganization proceedings, and the court has no way of knowing whether the plan will offer to pay interest on interest in full, in part, or not at all.

The petitions for authority to build five locomotives and to purchase ten passenger coaches are granted.