## HUIDEKOPER *v.* LOCOMOTIVE WORKS.

The ruling in *Fosdick* v. *Schall* (*supra*, p. 235), that the funds in the hands of a receiver of a railroad appointed in a suit to foreclose a mortgage executed by the company must be applied to the satisfaction of the lien of the mortgage creditors and not to the payment of debts due to the general creditors of the company, reaffirmed and applied to this case.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Henry Crawford* and *Mr. Ashbel Green* for the appellants.
*Mr. R. Biddle Roberts, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is also an appeal from a decree upon a petition of intervention filed in the case of Fosdick and Fish against the Chicago, Danville, and Vincennes Railroad Company. On the 1st of September, 1873, the Hinckley Locomotive Works entered into a contract with the railroad company for the sale of three locomotive engines, and on the 8th of October, 1873, for the sale of two more. By the terms of these contracts, notes were to be given for the price, payable at stated periods, which might be renewed if required. The title to the locomotives was to remain in the vendors until the notes were paid.

On the 8th of October, 1875, Anderson, the receiver in the cause, filed his petition in court, setting forth the contracts between the railroad company and the locomotive works, with a statement of the notes for the price then outstanding and unpaid; that on account of the peculiar construction of the engines they were not adapted to the business of the road, and could not be economically used, and that the locomotive company claimed title to the engines under their contract. He therefore asked authority from the court to surrender the engines to the locomotive company, and to adjust, settle, and pay for their use during and from the date of the receivership. On the same day the necessary authority for the restoration of the engines was granted, and the receiver was instructed, if

it was done, to receive the outstanding notes given for the price, and deposit them with the clerk, subject to the further order of the court.

On the 25th. of October, the locomotive company filed its petition in the cause, setting forth that the engines had been taken back and the notes deposited with the clerk, in accordance with the instructions which had been given the receiver. It then asked that the contracts and notes be referred to a master to ascertain and report the balance due upon them. On the same day the reference was made as asked, and on the 29th of November, 1876, the master reported that the engines were accepted by the railroad company under the contracts, and used continuously until the fall of 1875, when they were returned to the locomotive company in an injured condition ; that they had since been sold to other companies at reduced rates, and were worth when surrendered about one-half what they were when put into the possession of the company. He also stated his inability to ascertain definitely the amount to which the loco-motive company was entitled, except upon the basis of a sug-gestion made by the receiver, that a payment should be made by way of compromise of an amount which would be fifty per cent of the original contract price after deducting the amount received from the sale of the engines to other parties. He thereupon recommended the payment of $18,000 as a com-promise settlement of the claim.

On the 14th of December, 1876, which was subsequent to the decree of foreclosure, but before the sale, after reading the report of the master, on motion of the solicitor of the locomo-tive company, and with the consent of Fosdick and Fish and the railroad company, the court found due from the railroad com-pany, " for the use of and repairs to locomotives, the sum of $15,793.75," and ordered the receiver to pay it to the locomotive company out of the moneys in his hands as soon as it could be done consistently with the operation of the road and the pay-ment of claims theretofore ordered. At the time this order was made the intervening bondholders had been admitted as parties to the cause, and it does not appear that their consent was obtained. On the 5th of January, 1877, they filed objec-tions to the allowance of the claim on the ground that it was

in the nature of a mere claim for money due on an account closed before the appointment of a receiver for the railroad company, and that the bondholders had a paramount lien on the earnings of the road and the proceeds of the sale. At the same time they filed a motion to set aside the order made December 14, for the payment of the claim. No payment was made by the receiver under the order, and on the 28th of April, after the sale under the foreclosure and its confirmation, the matter came on again for hearing upon the motion to set aside. This motion was overruled, and a further order made for the payment of the amount which had been found due " out of the proceeds in . . . court." From this last and final decree the intervening bondholders took this appeal.

We think this case is settled by that of *Fosdick* v. *Schall, supra,* p. 235. The amount found due the locomotive company is not in reality for the use and repairs of the engines, but on account of what was agreed to be paid for the purchase. The railroad company contracted to buy the engines and pay a certain price. The locomotive company retained a paramount lien to secure the sum to be paid. The debt so incurred was not paid. The lien of the locomotive company has been in effect foreclosed, and a balance of the debt still remains due. Whatever may have been the form of the transaction, this is its substance. So far as we can see, no equitable claim upon any fund in court has been established as security for this debt. The locomotive company occupies the position of a general creditor with no special equities in its favor. As no question is presented for our consideration except that arising upon the payment of the money decree, that decree will be reversed and the cause remanded for such further proceedings, not inconsistent with this opinion, as may seem to be proper; and it is

*So ordered.*