AMERICAN LOAN & TRUST Co. *v.* EAST & WEST R. Co. OF ALABAMA *et al.*, (JERSEY CITY IRON Co., Intervenor.)

*(Circuit Court, N. D. Alabama, S. D.  April 30, 1891.)*

RAILROAD MORTGAGE—FORECLOSURE—PRIORITIES—SUPPLY LIENS.

A debt created for materials for original construction of a portion of a railroad more than six months before the appointment of a receiver in proceedings for the foreclosure of a mortgage is not within the rule authorizing the court to provide for arrears due for operating expenses of the road out of the net income of the property, and in the absence of a showing that there had been a diversion of current funds or income which should have been applied to the payment of the claim for such materials, will not be given a priority over the rights of the mortgage creditors.

In Equity.  On report of master.
*Webb & Tillman*, for intervenor.
*R. L. Fowler*, for complainants.
*A. T. London*, for receiver.

PARDEE, J. The Jersey City Iron Company filed an intervention in this case, alleging that the defendant railroad company was indebted to it for certain frogs and switches furnished prior to the original appointment of a receiver, and used in the construction of the railroad between Broken Arrow and Pell City. Intervenor claimed to be entitled to be paid as a preferred creditor out of any funds which might come into the hands of the receiver of the said corporation. The relief asked was for a reference to a master, and, upon the coming in of his report, for an order upon the receiver to pay said claim out of the first of any moneys which may come to his hands as such receiver. The petition of intervention was referred to the special master "to take evidence and report the facts, and, if the claim of the said petitioner shall be found under the evidence to be a valid claim against the East & West Railroad Company of Alabama, then to what extent the same is a lien upon the property in the possession of the court or upon the earnings thereof." After hearing parties and obtaining the evidence the special master filed a report, giving a full consideration of the entire case, considering it in all its aspects, to the effect "that the claim of the Jersey City Iron Company for $396.00 is valid against the East & West Railroad Company of Alabama, with interest from September 6, 1887, at eight per cent., and should be paid to the intervenor out of any surplus that may remain after paying the preferred debts of said railroad company; but that the intervenor has no lien, either by contract, law, or order of the court, on the earnings of the said railroad company in the hands of the receiver, or on the property of said company, or upon any funds that may arise from the sale thereof." This report was filed August 5, 1890. No exceptions appear to have been filed to the said report. Thereafter, on the 27th September following, counsel for the intervenor, for the receiver, and for the complainant filed a consent to the effect that the claim and petition of the Jersey City Iron Company may be submitted upon the report of the special master for decision of the court, stipulating that each of the counsel may submit in reference thereto briefs thereon. From this statement of the case it will be seen that the cause is submitted to the court upon the report of the special master, without any exceptions of any kind being made thereto. Unless the court is called upon to pass upon a case without any pleadings, it would seem that there is nothing to be done save to enter an order homologating the master's report as one which is satisfactory to all parties in the case. I find, however, in the briefs filed a contention which, I suppose, is intended to be submitted to the court. Counsel for intervenor contends that on the admitted facts of the case, particularly upon the admission that the frogs and switches sued for were not only used in the construction of the road, but were necessary for such construction, and without them the said extension could not have been completed or made fit for use, intervenor is entitled to be paid for these frogs and switches by the receiver out of the net income and earnings of the road. By "the net income," it is expressly stated, is intended to be meant all over and

above operating expenses. There is nothing in the report of the master or in any evidence submitted to the court which shows that there is any net income arising from the operation of the property over and above operating expenses. It is a fact, however, well known to the court, that all the net income over and above operating expenses is *prima facie* subject to the lien of complainant's mortgage, and has been particularly pledged by the court, with the complainant's consent, for the payment of receiver's certificates, which have been issued in large amounts in this case. Counsel for intervenor seems to rely mainly upon the case of *Fosdick* v. *Schall*, 99 U. S. 235, and the line of cases thereafter following, as holding that "debts contracted by a railroad corporation as a necessary part of the operating expenses, or for labor and supplies, or for necessary equipments or improvements of the mortgaged property, are privileged debts, entitled to be paid out of the current income if a mortgage trustee takes possession, or if a receiver is appointed in a foreclosure suit." In *Hale* v. *Frost*, Id. 389, it is held that the net earnings of the railroad while in possession of the court and operated by its receiver are not necessarily and exclusively the property of the mortgagees, but are subject to the disposal of the chancellor in payment of claims which have superior equities, if such shall be found to exist. The court, in applying this rule in that case, only allowed for the payment of supplies to the machinery department, furnished before the appointment of a receiver, and rejected that part of the account which was for material for construction purposes, as not based on any special equity. *Miltenberger* v. *Railway Co.*, 106 U. S. 287, 1 Sup. Ct. Rep. 140, decides:

"A court has the power to create claims through a receiver in a suit for the foreclosure of a railroad mortgage which shall take precedence of the lien of the mortgage. It may, therefore, provide that the receiver shall pay the arrears due for operating expenses for a period in the past not exceeding ninety days, and pay indebtedness not exceeding $10,000, to other connecting lines for materials and repairs and for ticket and freight balances, a part of which had been incurred more than ninety days before the order appointing him was made, and purchase rolling stock, and build six miles of road and a bridge, part of the main line of the road, and making such expenditures a lien prior to the lien of the mortgages."

But it must be noticed that the original construction dealt with was subsequent to the receivership. In *Trust Co.* v. *Souther*, 107 U. S. 591, 2 Sup. Ct. Rep. 295, the court, so far as it allowed for the payment of permanent improvements and original construction, dealt entirely with debts contracted by the receiver and during the receivership under the authority of the court. *Union Trust Co.* v. *Illinois, etc., Ry. Co.*, 117 U. S. 462, 6 Sup. Ct. Rep. 809, is to the same effect. The case of *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675, was a case in which the court was dealing with diversion of income for the improvement of the property by the trustees in possession, or by a receiver, and holds in such cases that the debts for operating expenses should be paid, if necessary, out of the *corpus* of the property; and in that case the court was careful to declare that "neither in *Fosdick* v. *Schall*, or *Huidekoper* v. *Locomotive Works*, 99 U. S. 258, did they decide that the income of a rail-

road in the hands of a receiver for the benefit of mortgage creditors who had a lien under their mortgage can be taken away from them and used to pay the general creditors of the railroad." Finally, in the case of *Wood* v. *Deposit Co.*, 128 U. S. 421, 9 Sup. Ct. Rep. 131, the supreme court expressly declares that "the doctrine of *Fosdick* v. *Schall*, is applicable wholly to debts incurred for operating expenses, and does not apply where it is a question of original construction; and, further, that it only applies where there is a diversion of the income of a going concern from the parties to which that income is equitably and primarily devoted." It does not appear from the record in this case, nor otherwise, that prior to the receivership there was any diversion of current earnings or funds which should have been applied to the payment of intervenor's claim, to the payment of interest on the bonded debt, or any diversion whatever of any earnings of the property which should have been applied to the payment of intervenor's claim. The debt is conceded to be one for original construction. The intervenor can take nothing under the doctrine of *Fosdick* v. *Schall*. In the order appointing a receiver in the main case no reservation whatever was made for any creditors of the railroad company, except for wages and running expenses incurred by said company in operating said railroad within three months next preceding the date of the order. It is probable that, following the case of *Hale* v. *Frost*, *supra*, the court could now order application of net income to payment of intervenor's claim if the court could now find that in equity such claim was superior to claims of complainants and others. In the case of *Easton* v. *Railway Co.*, 38 Fed. Rep. 12, which was a case where it was sought to charge the income arising during a foreclosure suit, and while the property was operated by a receiver, with the payment of a liability incurred by the railway company prior to the receivership on a contract for the carriage of goods, the circuit judge now presiding, in discussing the case, said: "In all the cases that I have examined, where debts arising before the receivership have been allowed as prior in equity to the claim of the bondholder on the earnings of the receivership, the underlying principle is that the debt when incurred operated in a direct way to the advantage of the mortgage holders;" and, citing this, counsel for intervenor has laid great stress on the admitted fact that the frogs and switches furnished by intervenor were not only used in the construction of the railroad, but were necessary for such construction, claiming thus a clear case where the debt incurred operated in a direct way to the advantage of the mortgage holders. In the *dictum* quoted the judge could not have intended to declare as a rule that all debts incurred by a railroad company prior to foreclosure of mortgage bonds, which operated in a direct way to the advantage of the mortgage holders, should be allowed as prior in equity to the claim of such mortgage holders on the earnings of the railroad during the receivership. Such a rule would be too broad to be sustained by the adjudged cases. It would practically give an equitable lien for all debts incurred in the construction of railroads, for in every case it would be easy to show that the debt operated in a direct way to the benefit of the mortgaged prop-

erty, and therefore to the benefit of the mortgage holders. The generally recognized rule is that original construction creditors have no superior equity, and there is no reason why an exception should be made in favor of intervenor who sold material for general construction relying on the credit of the railroad company, and this more than six months prior to any receivership. On the case as submitted no other decree can be entered than one approving and confirming the master's report, declaring that the Jersey City Iron Company is entitled to be paid $396, with interest from September 6, 1887, at 8 per cent., out of any surplus that may remain after paying the preferred debts of the railroad company; declaring further that the intervenor has no lien on the earnings of said railroad company in the hands of the receiver, or on the property of said company, or on any fund that may arise from the sale thereof.