# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## The Chesapeake and Ohio Railway Company v. Union Trust Company, et al.

### January 20, 1927.

1. RAILROADS—*Mortgages and Deeds of Trust—Priority of Liens—Supplies—Diversion of Funds.*—A mortgage bond holder of a railroad must look, for the payment of his debt, only to the net surplus income of the property, and if, therefore, there has been a diversion of funds, which should have been used in paying current operating expenses, then debts due for current expenses in operating the railroad are superior to the mortgage lien to the extent of such diversion.

2. RAILROADS—*Mortgages and Deeds of Trust—Priority of Liens—Supplies—Diversion of Funds.*—The doctrine that where there has been a diversion of funds which should have been used in paying current operating expenses, debts for operating expenses have priority over the mortgage debt, has not in Virginia been extended to include a debt where there is no such diversion, although it appeared that the debt created was necessary for the proper conduct of the road. It must be alleged and shown that there has been a diversion of the net earnings to the payment of permanent improvements, or other similar liabilities, to the detriment of the supply man.

3. BILLS IN EQUITY—*Allegations in Bill not Denied taken as True—Positive and Explicit Allegations.*—When the allegations of a bill are positive and explicit, and the bill is taken for confessed, such allegations are taken as true, and the introduction of proof to sustain them is unnecessary.

4. BILL OF EQUITY—*Allegations in Bill not Denied taken as True—Indefinite Allegations.*—When the allegations in a bill are indefinite, or the demand of the complainant is in its nature uncertain, then proof is required to sustain that which is indefinitely alleged, and to make certain that which in its nature is uncertain.

5. RAILROADS—*Mortgages and Deeds of Trust—Allegation and Proof of Diversion of Railroad Funds—Case at Bar.*—The instant case was a suit involving priority between the creditor of a railroad for supplies and the mortgage bondholders. The creditor claimed that in its bill it had alleged a diversion of the earnings of the railroad from current operating expenses to permanent improvements and that its allegation not being denied must be taken as true. The bill alleged

2

that appellant was "advised" that the earnings had been diverted and "thinks" that the diverted earnings should be restored.

*Held:* That this was not a positive nor explicit allegation that the earnings had been diverted and that, therefore, the appellee was not bound by its failure to deny the allegations.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for complainant. Petitioner appeals.

*Affirmed.*

The opinion states the case.

*Leake, Leake & Spicer,* for the plaintiff in error.

*S. A. Anderson, T. Justin Moore* and *Archibald G. Robertson,* for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

This suit had its origin in a bill filed by the Union Trust Company, a corporation, against the Richmond and Henrico Railway Company.

The object of the suit was to foreclose a mortgage, or deed of trust, executed on the 2nd day of May, 1910, by the railway company to the trust company, to secure the payment of an issue of bonds to the amount of $2,500,-000, and have the court declare the mortgage or deed of trust the primary lien upon the property and franchises of the railway company.

On the 20th day of September, 1913, the appellant filed its petition asking to be admitted a party defendant.

The petition contains the following material averments:

"1. Your petitioner is a railway corporation, owning and operating a line of railway running through Virginia and West Virginia and elsewhere and engaged in

the transportation of property, particularly of coal, from points in West Virginia to points in Virginia and elsewhere.

"2. The Richmond and Henrico Company is a street railway corporation, chartered under the laws of Virginia,. owning and operating a line of street railway in the city of Richmond, Virginia, and engaged in the business of a general railway, light and power company.

"3. The electric current used and developed by the said Richmond and Henrico Railway Company, is generated through the instrumentality of steam, and it was and is necessary for the business of the said company to keep it a going concern, for the said company to use large quantities of coal in the development of its electric light and power.

"4. Your petitioner, during the year 1913, hauled for the said Richmond and Henrico Railway Company, from Quinnimont, West Virginia, to Richmond, Virginia, certain carloads of coal consigned to the said Richmond and Henrico Railway Company, upon which there is due to your petitioner, as freight, the sum of $391.44, with interest, an itemized account of same, filed herewith, marked 'Exhibit C. O. L.' is prayed to be taken and considered as a part of this petition.

"5. There is also due your petitioner, by the said Richmond and Henrico Railway Company, certain demurrage on cars, amounting to $19.00, and also the amount of $3.37 for re-tracking Chesapeake and Ohio cars Nos. 50803 and 21221, derailed at connecting siding at Richmond, Virginia, March 25, 1913.

"6. Your petitioner further shows that said debt due your petitioner by Richmond and Henrico Railway Company, more particularly that part of the said debt embracing.the unpaid freight bills for the transportation of coal, was incurred for the preservation of the

properties of said Richmond and Henrico Railway Company, and necessary for its business and essential to keep it a going concern, and your petitioner is entitled to a prior lien upon the said railway company, its franchises, property and earnings, superior to the bondholders hereinafter referred to or any other person.

"7. Your petitioner is advised that the earnings of the said Richmond and Henrico Railway Company have, from time to time, been diverted from the payment of current operating expenses and used and expended for permanent improvements and additional equipment.

"8. Your petitioner thinks that it is proper for the court to restore to your petitioner the amounts that have been diverted from the current earnings due by the said Richmond and Henrico Railway Company, including the debts due your petitioner, and to give your petitioner a prior and preferential lien to that extent, upon the franchise and gross earnings and real and personal property of the said Richmond and Henrico Railway Company."

The prayer of the petition is:

"That the debts due to your petitioner be declared to be a prior lien to the exclusion of all the bondholders and other creditors of the said Richmond and Henrico Railway Company, upon its franchise, gross earnings, real and personal property, and that the income from the operation of the said company in the hands of receiver may be applied to the satisfaction of your petitioner's claim, and that the franchise and *corpus* of all the Richmond and Henrico Railway Company's property may be sold, if necessary, for the satisfaction of your petitioner's interest and costs, and the proceeds applied to the payment thereof."

The defendants being duly summoned but failing to appear, the petition was taken for confessed as to averments of facts, but not as to averments of law.

By decree the court referred the cause to J. Randolph Tucker, commissioner, to take and report to the court, among other things, an account of all claims against the Richmond and Henrico Railway Company which may be lawfully established, and which of such unsecured claims, if any, are prior, and which subsequent in right of payment to the bonds and coupons, or other liabilities or expenses, secured by the deed of trust mortgage, set forth in the bill of complaint.

[1] After a most exhaustive examination of the facts and the law relative to the questions submitted, the commissioner filed his report on June 22, 1914, refusing to allow the claim of appellant as a preferred claim, as prayed for in its petition, but did allow same as an unsecured claim without preference.

To this report appellant excepted on the following ground: "That said commissioner did not allow the said exceptant, the Chesapeake and Ohio Railway Company, a prior and preferential lien for the sum claimed in the petition heretofore filed therein, to the exclusion of all bondholders and other creditors of the Richmond and Henrico Railway Company, upon its franchises, gross earnings, real and personal property— either upon the *corpus* or its surplus income."

By decree entered on the 27th day of July, 1922, the court overruled the exception filed and confirmed the report of the commissioner.

This action of the court is assigned as error and raises the single question for decision.

In support of its assignment of error appellant urges four propositions, viz:

1. The service rendered was for the purpose of keeping the Richmond and Henrico Railway Company a going concern.

2. The claim of the appellant is entitled to preference regardless of any diversion of income.

3. Even if a diversion of income were necessary to be shown, in order for preference to be given the claim of appellant, such a diversion is an admitted fact in this case.

4. Where company notoriously in default in payment of its bonded indebtedness, credit is presumed to be extended bondholders.

To sustain the position assumed, great reliance is placed upon the decisions of the Supreme Court of the United States.

In *Fosdick* v. *Schall*, 99 U. S. 235, 25 L. Ed. 339, it is held that the mortgage bondholder of a railroad must look, for the payment of his debt only to the net surplus income of the property, and if, therefore, there has been a diversion of funds, which should have been used in paying current operating expenses, then a court of equity will require such current expense claims to be paid from the income arising from operation by a receiver before it will apply such earnings to the payment of the mortgage indebtedness.

This decision was approved in *Hale* v. *Frost*, 99 U. S. 392, 25 L. Ed. 419, and the doctrine there laid down has been reaffirmed with slight modifications in the following cases: *Huidekoper* v. *Locomotive Works*, 99 U. S. 258, 25 L. Ed. 344; *Miltenberger* v. *Logansport, &c., Co.*, 106 U. S. 286, 1 S. Ct. 140, 27 L. Ed. 117; *Burnham* v. *Bowen*, 111 U. S. 776, 4 S. Ct. 675, 28 L. Ed. 596; *Union Trust Co.* v. *Illinois Midland Co.*, 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963; *Union Trust Co.* v. *Morrison*, 125 U. S. 591, 8 S. Ct. 1004, 31 L. Ed. 825; *St. Louis, &c., Co.* v. *Cleveland*, 125 U. S. 658, 8 S. Ct. 1101, 31 L. Ed. 832; *V. & A. Coal Co.* v. *Central, &c., Co.*, 170 U. S. 356, 18 S. Ct. 657, 42 L. Ed. 1068; *Southern Ry. Co.* v. *Carnegie Steel Co.*, 176 U. S. 257, 20 S. Ct. 347, 44 L. Ed. 458; *Gregg* v. *Met. Trust Co.*, 197 U. S. 183, 25 S. Ct. 415, 49 L. Ed. 717.

[2] In *Gregg* v. *Met. Trust Co.*, 197 U. S. 183, 25 S. Ct. 415, 49 L. Ed. 717, the doctrine has been extended to include a debt where there is no diversion, where it appeared that the debt created was necessary for the proper conduct of the road. For a discussion of these decisions see: Bispham's Principles of Eq. (5th Ed.), 457; Pomeroy's Treatise on Eq. Rem., section 224; Note in 2 L. R. A. (N. S.), page 1015; High on Receivers (4th ed.), 508.

It must be conceded that the weight of authority is with the appellant in its contention, but unless we are to overrule our own decisions, we must adhere to the doctrine that before a general creditor is entitled to a preference over a bondholder, it must be alleged and shown that there has been a diversion of the net earnings to the payment of permanent improvements, or other similar liabilities, to the detriment of the supply man.

This principle was first announced in *Williamson's Admr.* v. *Washington, etc., Railroad Co.*, 33 Gratt. (74 Va.) 624. There certain mortgage creditors of the railroad filed their bill seeking a foreclosure of the mortgage and the appointment of a receiver. Intervening creditors set up the claim that they were entitled to a preference over the bondholders, by reason of having furnished labor and supplies to the railroad. It appears that the earnings of the road for the year prior to the appointment of the receiver had been sufficient to pay all current claims and leave a surplus for the bonded debt. It also appears that instead of paying the current claims, the officers of the company diverted the earnings to the payment of interest on the bonded debt, extensions and permanent improvements of the road, and curtailment of a floating indebtedness. Following the doctrine of *Fosdick* v. *Schall, supra,* Judge Staples,

delivering the opinion of the court, held the diversion unauthorized and the intervenors entitled to be preferred over the bondholders.

In *Addison* v. *Lewis*, 75 Va. 701, in discussing *Fosdick* v. *Schall, supra, Hale* v. *Frost, supra,* and *Williamson's Admr.* v. *Washington, etc., Railroad Co., supra,* Judge Christian said: "Indeed it has been said, and said truly, that these decisions constitute 'a new departure,' and I am not disposed to extend the doctrine one inch beyond the point to which the authority of these cases plainly points.

"The principles declared by the decisions of the Supreme Court of the United States were examined and approved by this court in the elaborate opinion of Judge Staples in the cases above referred to (see 33 Gratt. [74 Va.] 624), and may be stated as follows:

"1. Mortgage of the road, and present and subsequently acquired property of a railroad company, executed to secure the payment of its bonds, are, while it retains possession, a prior lien upon the net earnings of the road. *Hale* v. *Frost,* 9 Otto [99 U. S.] 389, 25 L. Ed. 419.

"2d. The funds in the hands of a receiver of a railroad appointed in a suit to foreclose a mortgage executed by the company must be applied to the satisfaction of the lien of the mortgage creditors and not to the payment of debts due to the general creditors. *Huidekoper* v. *Locomotive Works,* 9 Otto [99 U. S.] 258, 25 L. Ed. 344.

"3d. These rules are subject to this modification, however: The net earnings, while the road is in possession of a receiver appointed by the court, may be applied to the payment of claims having superior equities to that of the bondholders. *Hale* v. *Frost* and *Fosdick* v. *Schall, supra.*

"4th. These claims are confined to outstanding debts

for labor, supplies, equipments, or permanent improvements of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. *Fosdick* v. *Schall, supra."*

To the same effect is the holding of this court in *Fidelity Ins., &c., Co.* v. *S. V. R. R. Co.,* 86 Va. 1, 9 S. E. 759, 19 Am. St. Rep. 18.

We come now to a consideration of the contention that in the case at bar a diversion of the funds has been shown by the admission of the appellee, and consequently the appellant's claim is entitled to a preference, payable out of the *corpus* of the property. This contention is based on the averments of the petition, which is taken for confessed.

[3] It is settled law in this jurisdiction that when the allegations of a bill are positive and explicit, and the bill is taken for confessed, such allegations are taken as true, and the introduction of proof to sustain them is unnecessary. *Fisher* v. *Lee,* 98 Va. 159, 35 S. E. 441.

In *Price* v. *Thrash,* 30 Gratt. (71 Va.) 515, Judge E. C. Burks held that where the allegations are positive and explicit they will be treated as true on the bill taken for confessed as to them.

[4] It is also settled law in Virginia that when the allegations are indefinite, or the demand of the complainant is in its nature uncertain, then proof is required to sustain that which is indefinitely alleged, and to make certain that which in its nature is uncertain. 2 Rob. (old) Pr. 324; *Thompson* v. *Wooster,* 114 U. S. 104, 5 S. Ct. 788, 29 L. Ed. 105; *Welsh* v. *Solenberg,* 85 Va. 443, 8 S. E. 91.

In the instant case there is no proof of a diversion of the funds. The contention of the appellant must fail, unless the allegations of the petition are so positive and explicit as to warrant the court in holding them to be

allegations of fact, which the appellee, by its silence, concedes to be true.

The pertinent paragraphs of the petition are as follows:

"Your petitioner is *advised* that the earnings of the said Richmond and Henrico Railway Company have from time to time been diverted from the payment of the current operating expenses and used and expended for permanent improvements and additional improvement.

"Your petitioner *thinks* that it is proper for the court to restore to your petitioner the amounts that have been diverted from the current earnings due by the said Richmond and Henrico Railway Company, including the debts due your petitioner, and to give your petitioner a prior and preferential lien to that extent, upon the franchise and gross earnings and real and personal property of the said Richmond and Henrico Railway Company." (Italics ours.)

That the appellant is "advised" that the earnings have been diverted, and "thinks" the diverted earnings should be restored, does not, in our opinion, meet the requirements of the law. Nothing was alleged in the petition which called for an answer. No positive or explicit allegation was made that the earnings had been diverted; therefore, it cannot be said that the appellee is bound by its failure to deny the allegations of the petition.

We find no error in the decree appealed from and it is affirmed.

*Affirmed.*