## UNITED STATES v. EASTERN TRANSP. CO. et al.

### No. 400.

Circuit Court of Appeals, Second Circuit.
June 13, 1932.

See, also, 46 F.(2d) 143.

Frederick R. Conway, of Washington, D. C., for the United States.

Charles R. Hickox, of New York City, and Edward R. Baird, Jr., of Norfolk, Va., for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

**L. HAND, Circuit Judge.**

This appeal is from a decree dismissing on the merits a petition to limit the liability of the United States for damages arising from its ownership of the steamer, "Snug Harbor." That vessel, laden with coal, was sunk in the navigable channel between Montauk Point and Block Island on the night of August 15, 1920. There was a dense fog at the time, and the ship's master had lost his bearings, for in his report of the disaster to the Shipping Board, he placed it six miles away from where the wreck was found, and outside any navigable waters of the United States. Acting upon this information the Board got the help of the "Lighthouse Service" to look for the wreck, with an idea that it might be raised and salvaged; and the "Service," failing to find it at the place where the master had placed it, made unsuccessful efforts of a somewhat desultory sort to locate it elsewhere, such as inquiries of fishermen and the like. While these were in progress, on August twenty-third and twenty-fifth two coal barges fouled some obstruction in the channel between Montauk Point and Block Island, which was in fact almost certainly the "Snug Harbor"; but of these the "Service" learned only on September tenth, and, somewhat obtusely, failed to connect them with the vessel they were looking for, or if they did, did not follow up the lead. On September fourteenth, while the wreck was, therefore, still unmarked, two coal barges fouled it, as it lay in forty feet of water, and were both sunk. Their hull and cargo owners thereupon sued under the Suits in Admiralty Act (46 USCA §§ 741–752) in the Eastern District of Virginia for damages, counting upon the failure of the United States to mark the wreck as required by section 409 of title 33, U. S. Code (33 USCA § 409). The District Court dismissed the libels on the ground that the suits were not within the act, but this decree the Supreme Court reversed (Eastern Transportation Co. v. U. S., 272 U. S. 675, 47 S. Ct. 289, 71 L. Ed. 472), and ordered the consolidated causes for hearing, at which the libellants succeeded on the merits [The Snug Harbor (D. C.) 29 F.(2d) 588]; and the Circuit Court of Appeals for the Fourth Circuit [40 F.(2d) 27] affirmed the decree. Thereupon the United States filed this petition in the District Court for the Eastern District of New York to limit its liability so established. The respondents unsuccessfully excepted on the ground that the limitation statute did not apply to liabilities arising for violation of section 409 of title 33, U. S. Code (33 USCA § 409), and the cause went to hearing, where it was decided that the petitioner had not proved itself free from "privity or knowl-

edge" of the fault. This appeal is from the final decree dismissing the petition for that reason.

The Virginia courts recognized that the owner's duty to mark a wreck is conditional upon knowledge brought home to him, that his vessel has in fact been wrecked, and of its whereabouts; and that the duty to locate it requires only reasonable efforts and depends upon information by which it can be traced. Eastern S. S. Corp. v. Great Lakes D. Co., 256 F. 497 (C. C. A. 1); Sullivan v. P. Sanford Ross, Inc., 263 F. 348 (C. C. A. 2). Hence they were obliged to find, and did find, that the Shipping Board had knowledge of the disaster, and that it should have done more to find out where it lay than it did. Since we must treat as res judicata, not only the facts actually found, but their sufficiency to support the liability, there is but one issue left open here; that is, whether the knowledge on which the duty depended, which concededly had to reach some agent of the United States in order to impose it at all, in fact reached one with whose knowledge the United States was also chargeable under section 183 of title 46, U. S. Code (46 USCA § 183). Conceivably, there might be a difference between those whose knowledge would be imputed to the owner for one purpose and for the other; at any rate that possibility is all that is open here. If the decision of the Virginia courts was in fact based upon information which reached agents who charged the United States under section 183 of title 46, U. S. Code (46 USCA § 183), the appeal is at an end.

To learn what these courts actually decided we are free to look to their opinions (National, etc., Co. v. Oconto, etc., Co., 183 U. S. 216, 234, 22 S. Ct. 111, 46 L. Ed. 157; Radford v. Myers, 231 U. S. 725, 730–733, 34 S. Ct. 249, 58 L. Ed. 454; Oklahoma v. Texas, 256 U. S. 70, 88, 41 S. Ct. 420, 65 L. Ed. 831); especially when the decree incorporates them, as does that of the District Court (Owensboro v. Cumberland Tel. Co., 230 U. S. 58, 75, 76, 33 S. Ct. 988, 57 L. Ed. 1389). Judge Groner's reasoning was that the Board had knowledge of the collision by the report of the master, which, in spite of its particularity, should have been seen to be unreliable as to the place of the wreck. This uncertainty was emphasized by an inquiry of the "Service" on August nineteenth for further details. The Board in this posture became charged with a duty to find the wreck and mark it, which it properly turned over to the "Service." However, it could not escape liability for any failure of the "Service" to look diligently; and the "Service" did fail, both generally, and in especial, in not running down the news of the collisions of August twenty-third and twenty-fifth, which came to its notice on September tenth. No one can indeed say whether due diligence would have discovered the wreck, but the Board was in no position to debate that question; having failed in its duty, it might not argue that even proper care would have availed nothing. At least it has not proved this, and probably could not have. Hence it is liable. Such is the outline of Judge Groner's reasoning, and that of the Circuit Court of Appeals is not enough different to require discussion, though it assumed that the Board had learned of the collisions of August twenty-third and twenty-fifth, which was in fact untrue.

Thus the case was decided on the theory that the information which reached the Board imposed a duty to look for the wreck. So far as the liability depended upon the breach of this duty it could not be limited; it was brought home to the Board personally. In the course of the attempted discharge of the duty, more information arrived of which the Board did not learn. It was, to be sure, charged with this, but so far as it extended the duty already existing, any resulting liability might be limited, for this added duty was imputed to the Board; it was not personal. Now if it appeared, although due diligence to follow the original information would not have discovered the wreck, that the same diligence acting upon the news of the collisions of August twenty-third and twenty-fifth would have done so, there would be force in arguing that the liability for the loss at bar might be limited. However, the information as to these collisions did not reach the "Service" till four days before the collision in suit; and it was of two collisions at different places, both of them at some distance from the place where the "Snug Harbor" was in fact found. It is the merest assumption that due diligence acting upon this would have resulted in discovery of the wreck within so short a time; it might have confused the search. In this proceeding the petitioner has the burden of proving that it was not in "privity," which means in this connection that the liability arose from neglects not personal. As we cannot affirmatively attribute the damage to inaction of the "Service," the liability for whose con-

sequences the Board might limit, we must attribute it to that for which it was generally liable.

Thus it becomes unnecessary to decide whether a liability for violation of section 409 of title 33, U. S. Code (33 USCA § 409), can in any case be limited under section 183 of title 46, U. S. Code (46 USCA § 183); that we pass until it is so presented as to require decision.

Decree affirmed.