## BANKERS TRUST CO. et al. v. HENWOOD (four cases).

## In re ST. LOUIS SOUTHWESTERN RY. CO.

Nos. 10814, 10837, 10815, 10838.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1937.

164

Edward W. Bourne, of New York City (James H. McIntosh, of New York City, Thomas W. White, of St. Louis, Mo., Alexander & Green, of New York City, and Fordyce, White, Mayne & Williams, of St. Louis, Mo., on the brief), for appellant Bankers Trust Co.

John M. Holmes, of St. Louis, Mo. (Guy A. Thompson, of St. Louis, Mo., Edwin S. S. Sunderland, Malcolm Fooshee, Davis, Polk, Wardwell, Gardiner & Reed, all of New York City, and Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellant Guaranty Trust Co. of New York.

Allen C. Orrick, of St. Louis, Mo. (William D. Gaillard, Jr., Milbank, Tweed, Hope & Webb, all of New York City, and Nagel, Kirby, Orrick & Shepley, of St. Louis, Mo., on the brief), for appellant Chase Nat. Bank of City of New York.

Carleton S. Hadley, of St. Louis, Mo. (A. H. Kiskaddon, of St. Louis, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

The St. Louis Southwestern Railway Company is in course of administration under section 77 of the Bankruptcy Act, as amended (11 U.S.C.A. § 205). Appellee is the trustee appointed and acting under the act. Appellants are the trustees of various successive mortgagees, all junior to a first mortgage. Interest payments, due since initiation of this debtor's proceeding, on these junior mortgages, have not been made. There is no default on first mortgage interest. Appellee filed two petitions for acquirement of rolling stock—one covered five locomotives, the other ten air-conditioned passenger coaches. These petitions prayed that payment for this equipment be from cash accumulated in the treasury of the debtor. Appellants answered these petitions. Therein they expressed no opposition to acquirement of the equipment but prayed that this be done through equipment trust certificates instead of by payment from the treasury of the debtor and prayed that the funds in the treasury be, instead, applied to defaulted interest of the second mortgage bonds. Evidence was introduced as to the necessity for this equipment and upon the issues so made as to the method of acquiring the equipment. The court filed a memorandum opinion covering both petitions, made separate findings of fact as to each petition, and entered separate orders thereon in which the equipment was authorized to be financed from funds in the treasury of the debtor. From each of said orders appellants bring two appeals—one allowed by the trial court and one by this court. These orders were clearly in proceedings in bankruptcy within section 24b of the act, as amended (U.S.C.A. title 11, § 47(b); therefore the appeals allowed by the trial court will be dismissed.

The determination here is upon the appeals as allowed by this court. Such appeals were expressly limited "to the question of law presented by petitioners' Assignment of Error No. 13." This assignment is substantially identical in the two appeals, and our examination here requires no separate consideration of the two orders or of this assignment in the two cases. For convenience, we will select, in so far as possible, the case concerning the locomotives where references to the record are made. This assignment 13 is as follows: "13. The Court erred in its conclusion that the issuance of Equipment

Trust Certificates to finance the building or purchase of the five locomotives is not contemplated by section 77 of the Bankruptcy Act, and is within neither the letter nor the spirit of the law."

This assignment presents the issue of whether the court erred in concluding that the issuance of equipment trust certificates was "not contemplated by section 77 of the Bankruptcy Act, and is within neither the letter nor the spirit of" that law. However, before we arrive at that issue, it must appear that the court reached and acted upon the above conclusion, for such is the necessary premise of the claimed error. Appellants contend that the court reached and was governed by such conclusion in making these orders. Appellee contends that the court reached no such conclusion but that the orders resulted from an exercise of discretion.

The argument of appellants that the court based its action upon the conclusion that section 77 required such action and left him no discretion in the matter is along two lines. The first of these is that the court so stated in his memorandum opinion. The second is that "The Court must have decided to use cash as a matter of law because every factor requiring consideration indicated that Equipment Trust Certificates should be issued."

(1) The Memorandum Opinion.

In the orders themselves the only statement which even remotely touches the issue before us is one in the preliminary or recital portion of the orders, which is as follows:

"and it appearing to the Court that it is in the best interest of the trust estates of the said Debtors that said expenditure be made, and the Court being fully advised in the premises,

"It Is Ordered. * * *"

There were no separate statements of "Conclusions of Law" but the closing paragraphs of the "Findings of Fact"[1] are, as to the coaches and as to the locomotives, respectively, as follows:

"Berryman Henwood, Trustee, is entitled to an order authorizing him to pur-

---

[1] The findings of fact (omitting those relating to the necessity for the equipment) are as follows:

"6. That ten such coaches can be purchased by the Trustee at current prices for approximately $500,000.

"7. That the present cash position of said Berryman Henwood, Trustee, and the present and prospective earnings of the railroad lines of said Debtors fully justify the purchase of said passenger coaches at this time with cash.

"8. That if said cash expenditure is made and if other cash expenditures proposed by the Trustee are made, the Trustee will not have sufficient cash to pay to the Bankers Trust Company, as Trustee, $400,000, and interest, to be applied in payment of the interest due January 1, 1936, and July 1, 1936, on the St. Louis Southwestern Railway Company Second Mortgage Income Bond Certificates and interest thereon.

"Berryman Henwood, Trustee, is entitled to an order authorizing him to purchase ten air-conditioned passenger coaches for approximately $500,000 cash. * * *

"7. That the Trustee has sought to locate second-hand locomotives of said 4-8-4 type which might be for sale, and that to his knowledge no such locomotives are available.

"8. That Berryman Henwood, Trustee, obtained bids from several locomotive builders, and that the lowest bid received

called for an expenditure of approximately $645,000 for the purchase of five locomotives of the 4-8-4 type.

"9. That five such locomotives of approximately the same design as the said 4-8-4 type locomotives purchased in 1930 can be built by employes of the Trustee in the shops of the principal Debtor at Pine Bluff, Arkansas, at current prices for approximately $550,000.

"10. That the shops of the principal Debtor at Pine Bluff, Arkansas are adequate to handle the building of said five locomotives and that the Trustees' personnel at said shops is capable of building the same.

"11. That the building of said five locomotives will create steady employment for a larger number of the Trustee's employes than could be anticipated if said locomotives were to be purchased from locomotive manufacturers, and that if said locomotives are built in said shops at Pine Bluff, Arkansas, the shops of the Debtor St. Louis Southwestern Railway Company of Texas, at Tyler, Texas, will remain open until the completion of the locomotives, but that if said locomotives are not built in said shops, it will be necessary to reduce the working time of the said Tyler Shops to about one-half of full time.

"12. That the present cash position of said Berryman Henwood, Trustee, and the present and prospective earnings of the railroad lines of said Debtors fully

chase ten air-conditioned passenger coaches for approximately $500,000 cash. * * *

"Berryman Henwood, Trustee, is entitled to an order authorizing him to build five locomotives in the shops of the principal Debtor at Pine Bluff, Arkansas for approximately $550,000 cash." ·

■ Where, as here, the orders and findings leave it uncertain as to the basis of· the decision of the court and such basis is material in a determination· of an appeal, the opinion of the court may be examined to aid in understanding the decision. National Foundry & Pipe Works v. Oconto

Water Supply Co., 183 U.S. 216, 234, 22 S.Ct. 111, 46 L.Ed. 157; Radio Corporation of America v. Radio Engineering Laboratories, 66 F.(2d) 768, 771 (C.C.A.2); Larkin Packer Co. v. Hinderliter Tool Co., ·60 F.(2d) 491, 494 (C.C.A.10); United States v. Eastern Transp. Co., 59 F.(2d) 984, 985 (C.C.A.2).

■ Appellants rely upon two expressions from the memorandum opinion[2] as follows:

"The debtor came into this court to reduce its debts through a plan of reorganization. Certainly the approval of a new

---

justify the building of said locomotives at this time for cash.

"13. That if said cash expenditure is made, and if other cash expenditures proposed by the Trustee are made, the Trustee will not have sufficient cash to pay to the Bankers Trust Company, as Trustee, $400,000, and interest, to be applied in .payment of the interest due January 1, 1936, and July 1, 1936, on the St. Louis Southwestern Railway Company Second Mortgage Income Bond Certificates and interest thereon.

"Berryman Henwood, Trustee, is entitled to an order authorizing him to build five locomotives in the shops of the principal Debtor at Pine Bluff, Arkansas for approximately $550,000 cash."

[2] The memorandum opinion is as follows:

"The petitioner, Berryman Henwood, trustee, St. Louis Southwestern Railway Company, debtor, filed two petitions in this matter, one asking authority to expend approximately $550,000 to build five locomotives in the shops of the railway company, and the other asking authority to expend approximately $500,-000 to purchase ten air-conditioned passenger coaches. The necessity for the equipment was clearly shown by testimony of the trustee's operating officials, and the only question is as to the method of financing.

"The railway trustee seeks permission to pay for the ·equipment in cash, and the trustees of three general mortgages of the company and a minority stockholder ask that the railway trustee be directed to negotiate terms for the issuance of equipment trust certificates. One of the mortgage trustees, Bankers Trust Company, of New York, asks that the petitions for payment in cash be denied and that the court direct the railway trustee to pay certain defaulted interest installments for proper application under the railway's Second Mortgage Income Bond certificates. Default has been

made in the payment of interest installments under the three general mortgages represented at the hearings.

"The railway trustee's comptroller testified that the trustee's cash position and the present and prospective earnings fully justify the expenditure of cash for the building of the locomotives and the purchase of the passenger coaches.

"The debtor came into this court with its reorganization petition on December 12, 1935, because it had more debts than it could pay, and it is not the function of ·the District Court, which now has exclusive jurisdiction over the property of ·the debtor and the operation of the railroad, to increase the indebtedness by authorizing the issuance of additional securities. Such action, unless it be essential for the continued operation of the railroad as a common carrier, is not contemplated by amendatory .section 77 of the acts of Congress relating to bankruptcy (11 U.S.C.A. § 205 and note), under which this property is being reorganized.

"The debtor came into this court to reduce its debts through a plan of reorganization. Certainly the approval of a new form of indebtedness, which almost of necessity must be binding on the successor or reorganized company, thereby increasing the funded debt, when the trustee has or will have sufficient cash on hand to pay for the essential equipment, is within neither the letter nor the spirit of the law.

"The railway trustee admittedly can pay for the equipment with cash. The equipment is not only needed, but it is essential if the carrier is to continue operations in such a manner as to remain in any degree competitive to its competing lines.

"The security for the bonds issued under these mortgages was seriously depleted when this debtor came into court in December, 1935, and it is only fair—to these very mortgage trustees and their

form of indebtedness, which almost of necessity must be binding on the successor or reorganized company, thereby increasing the funded debt, when the trustee has or will have sufficient cash on hand to pay for the essential equipment, is within neither the letter nor the spirit of the law. * * *

"The mortgage trustees attempted to show a custom of long standing whereby railway equipment is ordinarily financed through equipment trust issues. There is

bondholders, as well as to the owners of the equity—that the property be reasonably rehabilitated and that replacements and improvements which are urgently necessary be made. The new equipment will enable the trustee and the reorganized or successor company more economically and efficiently to perform the ·services for which the debtor company was organized. It will be of benefit to these very creditors, as well as to all others having interests in the property, in that it will increase the value of the security of the bondholders, and the savings in operating expenses and the increased capacity to handle the carrier's business which is anticipated as a result of the new equipment will be reflected in the earnings.

"The mortgage trustees attempted to show a custom of long standing whereby railway equipment is ordinarily financed through equipment trust issues. There is no authority to the effect that equipment must be so financed, and the fact that such procedure is customary, if that be the case, is not sufficiently persuasive to alter the equities or logic of the situation.

"It is elementary law that current expenses arising out of the operation of a business must be paid by the trustee out of available funds. They constitute claims prior to claims of bondholders. Southern Ry. Co. v. Carnegie Steel Co., 176 U.S. 257, 20 S.Ct. 347, 358, 44 L. Ed. 458; Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596; Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339.

"In Southern Ry. Co. v. Carnegie Steel Co., supra, the court said:

" 'This court has uniformly refrained from laying down any rule as absolutely controlling in every case involving the right of unsecured creditors of a corporation, whose property is in the hands of a receiver, to have their demands paid out of net earnings in preference to mortgage creditors. But it may be safely affirmed, upon the authority of former decisions, that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim upon such income; that, within this rule, a debt not contracted upon the

personal credit of the company, but to keep the railroad itself in condition to be used with reasonable safety for the transportation of persons and property, and with the expectation of the parties that it was to be met out of the current receipts of the company, may be treated as a current debt; that whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction; and that when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use.'

"Although there has been no authoritative decision bearing directly on the propriety of utilizing cash to purchase railway equipment instead of through equipment trusts so that a portion of the cash may be used to pay defaulted bond interest, we find an analogy in the well-known 'six months' rule,' first applied in railroad receiverships and later extended to other public utility companies.

"This doctrine, developed by the federal equity courts, permits certain claims for operating expenses incurred within six months prior to receivership to be paid out of the property prior to claims of bondholders. The principle upon which the rule is based was first laid down by the Supreme Court in Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339. There the court said, 99 U.S. 235, loc. cit. 251, 25 L.Ed. 339:

" 'We have no doubt that when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property, pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. * * * The business of all railroad companies is done to a greater or less ex-

no authority to the effect that equipment must be so financed, and the fact that such procedure is customary, if that be the case, is not sufficiently persuasive to alter the equities or logic of the situation."

The last of the above two quotations from the opinion contains no comfort.for appellants but is rather the other way. The preceding one would go far to establish this construction by appellants were

tent on credit. This credit is longer or shorter, as the necessities of the case require; and when companies become pecuniarily embarrassed, it frequently happens that debts for labor, supplies, equipment, and improvements are permitted to accumulate, in order that bonded interest may be paid and a disastrous foreclosure postponed, if not altogether avoided. In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from those to whom in equity they belong, and used to pay the mortgage debt. The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income.'

"See, also, Virginia & Alabama Coal Co. v. Central Railroad & Banking Co., 170 U.S. 355, 18 S.Ct. 657, 42 L.Ed. 1068; Hale v. Frost, 99 U.S. 389, 25 L.Ed. 419.

"The same principle applies to expenses incurred during receivership. It arises out of the primary duty of a common carrier to the public to keep the carrier in operation. The rights of lienholders are subject to this paramount duty to the public.

"There is no reason why expenditures for additions and betterments chargeable to 'capital account' should not have the same preferred status as ordinary operating expenses, when it is shown that the improvements are seriously needed in the proper, efficient, and economical operation of the property and that cash is available. Thus extended, the rule applies to the instant petitions. As a matter of fact, it has been held that the mere fact that the expenditures are in a large part charged to 'capital account' under the Interstate Commerce Commission's rules does not alter the priority of the expenses as 'current debts.' Continental Trust Co. et al. v. W. R. Bonsal & Co. et al., 72 F.(2d) 975 (C.C.A. 4th).

"Amendatory section 77 provides in paragraph (a) (11 U.S.C.A. § 205(a)

thereof that 'the court * * * shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose.' This broad power carries with it the application to railroad reorganizations under this section of the authorities cited above, which originally applied to equity receiverships.

"Additionally, it has been held that the power of an equity court having charge of railroad property to make necessary repairs does not depend upon the consent of those interested. Fletcher v. Illinois Midland Ry. Co., 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963. If the court finds that capital expenditures are necessary, the same rule should apply when cash is available.

"In exercising its discretion, this court should not increase the indebtedness which the debtor seeks herein to decrease, but when cash is on hand to pay for necessary additions and replacements, as in this case, this court should authorize the expenditure of such cash for such purpose. To authorize the issuance of equipment trust certificates under the circumstances here present, in effect would be to borrow money to pay interest on outstanding bonds.

"It was urged at the hearings of these petitions that under the present money market it would be cheaper for the trustee to float an equipment trust issue than it would be to pay interest on the defaulted interest due the bondholders. This is not an effective argument in favor of the issuance of equipment trust certificates for the reason that there is no assurance that the plan of reorganization will provide for the payment of interest on defaulted interest. No plan of reorganization has been filed in these reorganization proceedings, and the court has no way of knowing whether the plan will offer to pay interest on interest in full, in part, or not at all.

"The petitions for authority to build five locomotives and to purchase ten passenger coaches are granted."

there nothing else in the opinion conflicting therewith. However, there are other expressions in the opinion which are to the contrary. After stating (as just above quoted) that there is no authority that equipment "must" be financed through trust certificates and that, even if customary, such method "is not sufficiently persuasive to alter the equities or logic of the situation," the court discusses instances where cash has been used to pay current operating expenses, to pay past operating expenses within the "six month" rule, and to pay for repairs. Arguing from the analogies of the above situations in equity receiverships and from the provision in section 77 (a), as amended (11 U.S.C.A. § 205(a), to the effect that under the section the court has the broad powers as in an equity receivership, the court concludes it has the power to make such expenditures for equipment from cash. Applying this conclusion, the court determines that: "In exercising its discretion, this court should not increase the indebtedness which the debtor seeks herein to decrease, but when cash is on hand to pay for necessary additions and replacements, as in this case, this court should authorize the expenditure of such cash for such purpose. To authorize the issuance of equipment trust certificates under the circumstances here present, in effect would be to borrow money to pay interest on outstanding bonds."

Obviously, the above discussion in the opinion as to the power of the court to use cash was purposeless if the court intended to base its ultimate conclusion on a lack of power to do otherwise under section 77. While it appears that the court deemed the issuance of trust certificates, when cash was available, to be contrary to the purpose of section 77 because it tended unnecessarily to increase the indebtedness of the debtor, yet it is equally certain that the court determined, also, that it should exercise discretion as to which method be used and, thus acting, determined in favor of cash. In the last analysis, the determination of the court to use cash was the result of the exercise of a discretion to choose between the two methods urged. Whether that discretion was soundly exercised is not before us, being without the limits of these appeals.

### (2) The Factors "Requiring Consideration."

Appellants contend that the court "must have decided to use cash as a matter of law because every factor requiring consideration indicated that Equipment Trust Certificates should be issued." This contention cannot be treated—within the limits of these appeals—as aimed at the wisdom of an exercise of discretion but must be regarded solely as directed to the issue that no discretion was exercised.

The "factors" upon which appellants rely are the money market (favorable at that time for trust certificates), the wishes of the creditors (a large majority of creditors affected favored certificates), the amount involved (relatively small amount), amount of existing certificates paid during these proceedings (certificates for this equipment would be more than counterbalanced by payment of existing certificates during 1937), other capital expenditures (relatively large amount expended and to be expended in 1937 for betterments), practice in other proceedings under section 77, and favorable terms for certificates (no showing of any difficulty in this respect).

Considering the precise matter before us, we find no necessity for discussing what were or were not factors to be considered by the court in determining these orders. The opinion of the court shows clearly that he did consider the advisability of entering the orders[3] and the effect thereof upon the property and upon these creditors.

---

[3] In the course of the opinion the court said:

"The railway trustee admittedly can pay for the equipment with cash. The equipment is not only needed, but it is essential if the carrier is to continue operations in such a manner as to remain in any degree competitive to its competing lines.

"The security for the bonds issued under these mortgages was seriously depleted when this debtor came into court in December, 1935, and it is only fair—to these very mortgage trustees and their bondholders, as well as to the owners of the equity—that the property be reasonably rehabilitated and that replacements and improvements which are urgently necessary be made. The new equipment will enable the trustee and the reorganized or successor company more economically and efficiently to perform the services for which the debtor company was organized. It will be of benefit to these very creditors, as well as to all others having interests in the property, in that it will increase the value of the security of the bondholders, and the savings

Construing the opinion alone or in the light of the evidence and of the contentions of appellants, we are able to reach but one conclusion, which is that these orders are the results of an exercise of discretion on the part of the trial court.

The orders must be, and are, affirmed.

"It was urged at the hearings of these petitions that under the present money market it would be cheaper for the trustee to float an equipment trust issue than it would be to pay interest on the defaulted interest due the bondholders. This is not an effective argument in favor of the issuance of equipment trust certificates for the reason that there is no assurance that the plan of reorganization will provide for the payment of interest on defaulted interest. No plan of reorganization has been filed in these reorganization proceedings, and the court has no way of knowing whether the plan will offer to pay interest on interest in full, in part, or not at all."

